WALDEN, Judge.
This is an appeal in a negligence action from a directed verdict entered in favor of the defendants and against the plaintiff, Celestine O’Loughlin, on the issue of punitive damages. We reverse.
Plaintiff was working on the premises of a marina when Como Oil Company’s gasoline truck, operated by Como’s driver, Vincent Spiteri, came to deliver gasoline into the marina’s underground tanks. During the course of filling the tanks by Spiteri there was a spillage or .overflow of gasoline which exploded and caught fire. As a consequence plaintiff was propelled into the waterway and burned.
Plaintiff brought a personal injury action seeking compensatory and punitive damages. The case proceeded to jury trial against defendants, Como Oil Company, Inc., and Como’s insurance carrier, Federated Mutual Insurance Company. These defendants were the beneficiaries of the directed verdict.
*368 The truck driver, Spiteri, could not be found for service of process and so was dropped as a party defendant. He did not appear or testify at trial.
The careful standards to be applied in the consideration of a directed verdict are well known. Suffice it to say, the direction of a verdict should be cautiously given and all inference of fact must be construed most strictly in favor of the non-movant. Thundereal Corp. v. Sterling, 368 So.2d 923 (Fla. 1st DCA 1979).
For an outline of the definitive elements of punitive damages, see Ojus Industries v. Brannam, 351 So.2d 1055 (Fla. 4th DCA 1977), and Ellis v. Golconda Corp., 352 So.2d 1221 (Fla. 1st DCA 1977). For a discussion of the bases of vicarious responsibility for punitive damages, see Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla.1981).
From a glean of the record we find at least this testimony which in fact and by inference supports the claim of punitive damages to the degree that the jury should have been entitled, under appropriate instructions, to assess the issue. We summarize:
Fire Inspector Edwards testified in his expert opinion that if the driver had followed the law of this State the accident would not have happened. Moreover, the transportation of gasoline — gasoline is a very hazardous material. It’s very defined on what it takes to ignite it. The gasoline vapors have to be a mixture of air. The driver should be aware of these problems and conditions and hazards of gasoline. At that point when the operator noticed and found a leak in the truck, he should have immediately stopped using that vehicle at that time and repaired it and made sure it could be repaired, because gasoline vapor is what actually the problem was. (The law requires this ... a cup of gasoline with the right vapor to air mixture, its like five sticks of dynamite explosive force.) So it’s not a safe thing to be handled.
John Hoke, Jr., fire inspector for Pompano, testified from his report that the driver was told to fill each tank with 1,000 gallons, that while in the process he learned of a gas leak in his truck but continued to fill the tanks. There was also indication of two leaks, one at the rear of the truck and another underneath in the middle. Fire Marshall’s Code 4A-16.112 prohibits operating a vehicle unless it is properly maintained, free of leaks, free of any kind of dirt on things that would make the truck inoperable or unsafe in filling, nor are you to leave the vicinity of the vehicle while pumping, at anytime. The fire inspector also testified that the rubber grommet had not been on the nozzle and that the nozzle ejected itself. This was caused by either the overflowing of the tank when it filled up or the back pressure from it. Had the rubber grommet been on, the nozzle could not have pushed itself up thereby spilling gasoline on the ground.
The fire inspector also testified as to the accumulation of grease and oil on the truck, which is a flammable accumulation.
Fire Marshall Shelley of Pompano testified that the fire was caused by the tanks overfilling; that the driver did not dip-stick the tank to determine the capacity of the tank and if it could accept the gallonage ordered; that in his opinion, the driver did not conduct himself properly as an operator of the vehicle should.
Steven Lawrence Tome, former truck driver of Como Oil, testified that he never dip-sticked the tanks, that he was never even given a dip stick. Como never instructed him on how to drive a trailer containing flammable substances nor instructions as to safety precautions. No one even asked him if he had experience driving a gasoline tanker. The drivers were not required to inspect the trucks. Tome further testified that during the times when he drove Trailer No. 21, the trailer in question, he never saw a rubber on the nozzle and that while he drove the truck, it was leaking. Police Officer Hurt testified that the driver told him he knew of the leak but did not have the *369 tools necessary to fix it. Rodger Edwards, a fire inspector testified that there was an accumulation of grease and dirt on the truck which is highly inflammable and very explosive; that this accumulation can be ignited, especially when you are carrying the liquid outside the tank, besides inside, which creates a large fire hazard. The fire inspector further testified that in his opinion this amounted to grossly, careless disregard for the public safety ... that this accident should not have happened and there was no due care applied here in any of the operation of the vehicle, ... that the driver did not have the proper training to handle the situation; ... and that therefore, the spilling of the gasoline, which was ignited, resulting in the destruction of the building and injuries should never have happened.
The fire inspector continued that this fire was caused by an accumulation of gasoline vapors which were accumulated from the filling operation conducted at this location of the underground fuel tank. The vapors from the leaking gasoline accumulated with the gasoline which had appeared on the surface of the ground in the area of the fill spout, which were then ignited by some source, most likely could have been a refrigeration unit or could have been an open flame, device in the immediate area, resulting in the explosion and massive fire. In his opinion, to prevent the fire, the operator should have been trained so that whenever the truck malfunctioned, he could repair it. The driver should be aware of the hazards of gasoline and when he knew of the leak, he should have immediately stopped using that vehicle at that time and repaired it — because gasoline vapor is what actually was the problem. The next thing he should have done when he pulled up, he should have known how much fuel he was going to pump into the container. It should be dipped and calculated how much fuel is in it, how much more it will take. The truck should have been kept in a clean condition.
We find that there was an adequate basis for the jury to determine that Como’s driver was guilty of gross negligence and that such was attributable to Como Oil because of Como’s failure to oversee and maintain its equipment and failure to train and equip its driver, particularly when handling a hazardous substance.
All circumstances considered, we are of the opinion that the direction of the verdict was reversible error, and that the issue should have been submitted to the jury. American Motors Corp. v. Ellis, 403 So.2d 459 (Fla. 5th DCA 1981).
REVERSED AND REMANDED.
BERANEK, J., concurs.
OWEN, WILLIAM C., Jr., Associate Judge, dissents without opinion.