ERVIN, Chief Judge,
dissenting.
The respective responsibilities of the court and jury in assessing a claim for punitive damages are set out in Wackenhut Corp. v. Canty, 359 So.2d 430, 435-36 (Fla. 1978):
The court is to decide at the close of evidence whether there is a legal basis for recovery of punitive damages shown by any interpretation of the evidence favorable to the plaintiff. Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214, 222 (Fla.1936). A legal basis for punitive damages exists where torts are committed in an outrageous manner or with fraud, malice, wantonness or oppression. Id. at 221. Once the court permits the issue of punitive damages to go to the jury, the jury has the discretion whether or not to award punitive damages and the amount which should be awarded. Punitive damages “are peculiarly left to the discretion of the jury as the degree of punishment to be inflicted must always be dependent on the circumstances of each case, as well as upon the demonstrated degree of malice, wantonness, oppression or outrage found by the jury from the evidence.” (emphasis supplied) Id.
The Wackenhut rule was later refined in Arab Termite and Pest Control v. Jenkins, 409 So.2d 1039 (Fla.1982), holding that the setting aside of a jury verdict requires more than a finding that the verdict was contrary to the weight of evidence; that it must be found that the verdict is “manifestly against the weight of the evidence, ... . ” Id. at 1042 (e.s.). After the supreme court remanded the Jenkins case to the Second District Court of Appeal to determine whether the trial judge’s order, remitting a portion of the punitive damage award, complied with this standard, the Second District, in approving the remittitur, applied the Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980), reasonable man standard for reviewing a trial judge’s discretion:
In reviewing this type of discretionary act of the trial court, the appellate court should apply the reasonableness test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
Jenkins v. Arab Termite and Pest Control, 422 So.2d 922, 923 (Fla. 2d DCA 1982). More recently, we reiterated the manifest weight of the evidence standard in Louisville and Nashville Railroad Co. v. Hickman, 8 FLW 1016, 1018 (Fla. 1st DCA, April 12, 1983), stating:
Finally, appellants argue that the amount of punitive damages is excessive. We tend to agree, but recent Florida Supreme Court decisions have left us with very restricted powers of review in this area. See, Wackenhut Corp. v. Canty, 359 So.2d 430, 441 (Fla.1978) (Judge Robert Smith dissenting). Post-Wackenhut, it is still proper to issue an order for new trial or remittitur where the manifest weight of the evidence shows that the amount of punitive damages assessed is out of all reasonable proportion to the malice, outrage, or wantonness of the tor-tious conduct. But, either this finding must be affirmatively supported by the record, or the judge must find that the jury was influenced by matters outside the record. Arab Termite and Pest Control v. Jenkins, 409 So.2d 1039 (Fla.1982). The trial judge declined to order a new trial, or a remittitur, and we are unable to find the requisite affirmative showing in the record. There is no indication that *953 the jury was influenced by matters outside the record.
(e.s.)
In the case at bar the defendants moved for directed verdict on the punitive damage issue both at the close of plaintiffs evidence and at the close of all the evidence, and the motion was denied. Following trial, defendants moved to alter the judgment or for a new trial, which was also denied. The issue was thus considered twice by the trial court prior to the submission of the case to the jury and once thereafter. The essential question now before us, as we stated in Hickman, is simply whether the amount of punitive damages assessed is out of all reasonable proportion to the malice, outrage or wantonness of the tortious conduct. Or, in the words of the Jenkins court, on remand, whether reasonable, persons could differ as to the propriety of the action taken by the trial court. The answer to this question requires a very careful review of the record.
The employee Forthman, as the majority has acknowledged, admitted that he knew the dog in question, a Doberman Pinscher, had been placed in rabies quarantine for having previously bitten a human being. The evidence, taken in the light most favorable to the prevailing party below, discloses that appellee was unaware that the dog had been so confined, and, although she had asked that the dog be moved to a better lighted area so that she could more thoroughly examine it, she never indicated that the dog was her friend’s, nor did she ask that it be handed to her. Moreover, the dog which Forthman released from the cage was a male, contrary to plaintiff’s prior statement advising that she was looking for a female. In releasing the untagged dog, Forthman clearly acted in violation of Florida Administrative Code Rule 10D-3.-91(2)(c), which provides that any dog that bites a human being shall be quarantined for a period of ten days, and during such period the animal shall not be released or removed unless permission is obtained from the county health unit director.
Forthman, who had never worked in an animal pound before his employment at the Society, testified that his on-the-job training had not been extensive, that he did not recall receiving any written materials to study as part of his training, or instructions on handling dog bite cases, or obtaining any information regarding the Florida Administrative Code’s quarantine rules.
Notwithstanding the rule’s proscriptive provisions with which Forthman’s employer was acquainted, the manager of the humane shelter admitted that the Society had a well-understood policy of permitting an employee to take an animal out of rabies quarantine to allow a patron to handle the animal under circumstances disclosing that person has indicated that the dog might be his or her own and the dog has evidenced some recognition of the person and not shown any aggressive behavior. Despite his tacit approval of Forthman’s conduct, the manager, after the incident in question, instructed Forthman never to release a dog from quarantine again.
Thus we see from the above record that the employee’s willful act in removing the dog from the cage and handing the dog to plaintiff exposed her to an unreasonable risk of which he was either aware or should have been aware: an attack by a dog which no one then knew for certain was not rabid.[1] The employer’s answers moreover divulge a negligent failure to advise the enr- *954 ployee of the pertinent rules relating to quarantined animals, or to train him properly.
The majority in reversing has apparently overlooked the purpose of punitive damages, which is “to punish one whose wrongdoing surpasses mere mistake, negligence or thoughtlessness and to deter others from similar misconduct.” U.S. Concrete Pipe Co. v. Bould, 437 So.2d 1061, 1066 (Fla. 1983) (Ehrlich, J., specially concurring) (e.s.). Restated, “[pjunitive damages are awarded to punish the wrongdoer and to deter the commission of similar acts in the future.” St. Regis Paper Co. v. Watson, 428 So.2d 243, 247 (Fla.1983).
I fail to see that the facts in this case have any significant distinction from those in Wackenhut. There, a Spanish-speaking security guard, employed by Wackenhut, demanded to see what plaintiff had beneath his shirt. When plaintiff’s explanation was not understood because of the guard’s inability to understand English clearly, the guard without more pulled at an object which, when uncovered, was revealed to be a colostomy bag. As a consequence of this act, plaintiff suffered a prolapse of the colon requiring surgical removal of part of it as well as additional health problems.
In his dissent to the Wackenhut decision, Judge Robert Smith summarized cases from other jurisdictions which had retained “for sparing use, power to remedy punitive damage verdicts that are found so shockingly excessive as to indicate jury passion, or which fall under similar rubrics.” 359 So.2d at 445. The dissenting opinion continued with the following words: “This case contains none of those aggravating factors. Wackenhut did not dispatch its guard to pull Mr. Canty’s colostomy bag; it negligently failed, on this occasion, to provide a bilingual guard for a store having both English- and Spanish-speaking patrons.” (e.s.) Id. at 446. Despite the employer’s simple negligence, the punitive damage award was sustained, apparently on the view that the security guard’s act was in wanton disregard of a risk that could have, with a minimum degree of care, been avoided. And it was also sustained as to Wack-enhut on the theory that by placing an improperly trained security guard in a retail store, the employer should have been aware of the risks its negligence might cause members of the public to be subjected.
In a realistic sense, neither the security guard in Wackenhut, nor the Society’s employee can be said to have maliciously intended the consequences that resulted from their acts. Certainly the security guard did not willfully intend to extract by force the plaintiff’s colostomy bag. Neither did the Society’s employee intend, by removing the dog from its quarantined cage, to subject DeGroat to an attack by an animal that was possibly rabid. The guard’s intention was only to apprehend a person whom he suspected to be shoplifting, and the Society’s employee’s purpose was to assist a visitor’s search for a missing dog. Yet, they both acted in a willful disregard of a risk that they either knew, or with a reasonable amount of care should have known existed. This is precisely the type of conduct that punitive damages are designed to punish: the tortfeasor’s “wanton or willful disregard of the safety of others, ....’’ U.S. Concrete Pipe Co. v. Bould, 437 So.2d at 1066 (Ehrlich, J., concurring) (e.s.).
Punitive damage awards have similarly been upheld against employers on facts disclosing both an employee’s reckless disregard for the rights of others and the employer’s failure to supervise properly the employee’s duties or to instruct him on the requirements the law has placed upon the discharge of his duties. See, e.g., O’Loughlin v. Como Oil Co., Inc., 434 So.2d 367 (Fla. 4th DCA, 1983) and Louisville and Nashville Railroad Co. When the employer’s negligent conduct involves also — as here — a known violation of the law, surely it cannot be said that the combined effect of both the employee’s and employer’s actions was such that no reasonable person could differ as to the propriety of the action taken by the trial court. I would therefore abstain from second-quessing the collective judgments of *955 the jury and trial judge and would affirm the award in its entirety.
I do not understand the majority’s dicta stating that had punitive damages been a proper issue, the trial court was required to instruct the jury that the society must be guilty of a separate and independent tort. This issue is not properly before us. At no time did the defendants object to the form of the instruction or to the verdict submitted to the jury. Certainly, we should not now entertain it on appeal. See U.S. Concrete Pipe Co. v. Bould. Moreover, the instruction as given fully complied with the dictates of Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla.1981). The instruction states:
Although the misconduct of the employee, upon which the vicarious liability of the employer for punitive damages is based, must be willful and wanton, it is not necessary that the fault of the employer, independent of his employees (sic) conduct, also be willful and wanton. It is sufficient that the plaintiff allege and prove some fault on the part of the employer which foreseeably contributed to the plaintiffs injury to make him vicariously liable for punitive damages.
Mercury Motors requires only that “[b]efore an employer may be held vicariously liable for punitive damages under the doctrine of respondeat superior, there must be some fault on his part.” 393 So.2d at 549 (e.s.). In my judgment, to require the trial court to instruct a jury that the employer’s tort must be separate and independent from' that of the employee could have the effect of needlessly confusing the issues by raising the belief in the jurors’ minds that the tort of the employer must — like that of the employee — also be wanton and willful. As Mercury Motors clearly demonstrates, the employer need only be guilty of simple negligence. I therefore see no reason to depart from Mercury Motors by placing an unnecessary ingredient in an area of the law that is already excessively complicated.

. In assessing the gravity of the employee’s conduct, surely we should not consider a fact that occurred after the event in question — the fact that the animal was ultimately determined not to be rabid. The victim’s mental anguish was no doubt aggravated by her uncertainty as to whether the dog that had attacked her was rabid. As the trial judge commented during the arguments on the motion for directed verdict, had the dog been rabid, “I don’t think we would be discussing the issue of punitive damages. Everyone would have said, ‘That’s outrageous.’ . .. [T]he Society is responsible for the Society’s actions in allowing the Plaintiff to be exposed to the animal, whether it did ... have rabies or whether it did not.”
Thus, we can only consider facts which were apparent to the employee at the time of the incident, and not later events, in determining whether he then acted in willful disregard of the safety of another.