466 So.2d 1061 (1985)
COMO OIL COMPANY, INC., et al., Petitioners,
v.
Celestine O'LOUGHLIN, Respondent.
No. 64139.
Supreme Court of Florida.
February 21, 1985.
Rehearing Denied May 2, 1985.
Samuel Tyler Hill of Hill, Neale & Riley, Fort Lauderdale, for petitioners.
Roy W. Allman, Fort Lauderdale, for respondent.
PER CURIAM.
This case is before us based upon conflict between O'Loughlin v. Como Oil Co., 434 So.2d 367 (Fla. 4th DCA 1983), and several decisions of this Court. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. The issue here is whether the trial court properly directed a verdict for the defense on a punitive damages count in a negligence action. We find the directed verdict proper under the facts of this case and quash O'Loughlin.
O'Loughlin suffered serious personal injuries in a gasoline explosion and fire at a marina. The conflagration occurred when a Como Oil Company truck driver overfilled an underground gasoline storage tank. Hot asphalt caused part of the resulting gasoline "lake" to vaporize, and an electric spark ignited the gasoline vapors. O'Loughlin was burned and thrown into the water by the explosion. She brought a negligence action seeking compensatory and punitive damages from Como Oil, its driver, and insurer. The driver could not be served and was dropped from the case.
After O'Loughlin rested her case at trial, Como Oil moved for a directed verdict in its favor on punitive damages. O'Loughlin argued that she had presented sufficient evidence to go to the jury on punitive damages because the evidence established that the Como Oil truck had dirt and grime on the outside, had leaks, and lacked a safety grommet on the filler nozzle; that the driver failed to have or use a dip stick to measure the gasoline level in the underground tanks before pumping the gasoline; that the driver was responsible for permitting *1062 between fifty and three hundred gallons of gasoline to overflow an underground tank while he watched the flow meter on the truck rather than the actual filling operation; and that Como Oil ran a "shabby" operation. The trial court granted the directed verdict, finding that the evidence showed gross negligence but not willful and wanton conduct so as to support punitive damages. The district court reversed and remanded for a new trial on punitive damages. It found that an adequate basis existed for the jury to find that the driver's gross negligence could be imputed to Como Oil because of its failure to maintain its equipment and to train and equip the driver in the proper handling of a hazardous substance.
Como Oil contends that the district court erred in finding gross negligence as a basis for punitive damages. We agree.
We recently addressed this issue in White Construction Co. v. Dupont, 455 So.2d 1026 (Fla. 1984). In White we held that the degree of negligence necessary for punitive damages is willful and wanton misconduct equivalent to criminal manslaughter. The required misconduct goes beyond gross negligence. The district court erred in finding evidence of gross negligence sufficient to create a jury question on punitive damages. We hold that under no view of the evidence does Como Oil's conduct reach the willful and wanton level necessary to support an award of punitive damages. The trial court correctly directed a verdict for Como Oil on this issue.
Accordingly, we quash the district court decision under review and remand for proceedings consistent with this opinion.
It is so ordered.
BOYD, C.J., ADKINS, OVERTON, ALDERMAN and McDONALD, JJ., concur.
SHAW, J., concurs in part and dissents in part with an opinion, in which EHRLICH, J., concurs.
SHAW, Justice, concurring in part and dissenting in part.
I agree with the majority that gross negligence, as a term of art, is legally insufficient to support punitive damages. Nevertheless, the ultimate question for this Court is not whether the district court failed to use the correct "magic words," but whether it erred in reversing the trial court's directed verdict for the defendant/petitioner on the issue of punitive damages.[1]Congregation Temple De Hirsch v. Aronson, 128 So.2d 585 (Fla. 1961). My reading of the evidence persuades me that the district court decision should be approved.
In conducting its review of the directed verdict, the district court followed, as should we, the well-established rule that an appellate court must view the evidence in the light most favorable to the nonmovant and indulge every reasonable inference in favor of the nonmovant. Teare v. Local Union No. 295, 98 So.2d 79 (Fla. 1957); Red Top Cab & Baggage Co. v. Dorner, 159 Fla. 538, 32 So.2d 321 (1947). This Court appeared to have recognized in Ingram v. Pettit, 340 So.2d 922 (Fla. 1976), that there are no clear and distinct definitional lines between different degrees of negligence that can be measured with mathematical precision. Justice England, speaking for a majority of the Court aptly recognized:
Our jurisprudence reflects a history of difficulty in dividing negligence into degrees. The distinctions articulated in labeling particular conduct as "simple negligence", *1063 "culpable negligence", "gross negligence", and "willful and wanton misconduct" are best viewed as statement of public policy. These semantic refinements also serve a useful purpose in advising jurors of the factors to be considered in those situations where the lines are indistinct. We would deceive ourselves, however, if we viewed these distinctions as finite legal categories and permitted the characterization alone to cloud the policies they were created to foster.
Ingram, 340 So.2d 922, 924 (footnotes omitted). Identical conduct, in different settings, can and does result in different degrees of liability. Thus, under our system of justice, where the line is indistinct, the wisest course is to leave the question in the hands of the jury. See our discussion in Carraway v. Revell, 116 So.2d 16, 19 (Fla. 1959).
The uncontroverted evidence is that Como Oil was to deliver two thousand gallons of gasoline to a marina. The marina had two underground tanks, each of which had a capacity of two thousand gallons. After pumping a portion of the delivery amount into one tank, the driver connected to the second tank and pumped the remainder.[2] The second tank overfilled and hundreds of gallons were either pumped or overflowed onto the street. The overflow ran underneath and adjacent to a nearby retail fish market where it was ignited, severely burning respondent and blowing her into the water. There was expert testimony that the shortcomings of Como Oil were at the root of the explosion. First, there was evidence that Como Oil did not check the qualifications of drivers before hiring them and did not instruct or train them in proper handling of volatile gases before assigning them to delivery routes. There was evidence that the driver on the day in question left the truck unattended while pumping was in progress, continued to pump gasoline even though it was pointed out to him that the equipment and truck were leaking, did not check the capacity of the receiving underground tank to hold the contemplated delivery, and, thus, pumped hundreds of gallons of explosive gas onto a hot asphalt street. Second, there was evidence that Como Oil did not provide or maintain the equipment necessary for safely delivering gas. The delivery truck did not have a dip stick or other device to determine the capacity of receiving tanks prior to delivery. The standard procedure was, apparently, to connect and pump at four to five gallons per second in the expectation that the capacity of the receiving tank was adequate. There was evidence that the delivery hose nozzle was missing a critical rubber grommet which would have secured the nozzle to the tank and prevented ejection of the delivery hose as back pressure built up in the tank. Third, there was evidence of other safety violations by Como Oil which did not bear directly on the explosion at issue but which indicated that Como Oil routinely operated what an expert witness described as a "shabby" operation.
The expert testimony was that this explosion could have ignited the tank truck itself, with thousands of gallons of gas, except for two fortuitous factors: the spilled gasoline ran down an incline and did not form a pool under the truck, and a favorable brisk wind (fifteen to twenty knots) blew the flames of the explosion away from the truck. I am persuaded from the above evidence that respondent/plaintiff presented a legal basis for awarding punitive damages based on wanton and willful negligence of Como Oil itself, not just the vicarious liability for the negligence of its employee driver. Thus, I do not perceive this case to be in the line of Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981). The evidence and the expert testimony was such that the jury could *1064 have found that the Como Oil operations were a willful and wanton ongoing hazard to the public and that punitive damages were an appropriate remedy.
One additional point deserves comment. Relying on White Construction Co. v. Dupont, 455 So.2d 1026 (Fla. 1984), and Carraway v. Revell, 116 So.2d 16 (Fla. 1959), petitioner urges that the culpable negligence involved in a manslaughter charge is equivalent to the culpable negligence required as a basis for punitive damages and that the negligence here does not rise to the level of that necessary to support a manslaughter charge. This argument overlooks the distinction we drew in Ingram:
Cases in this category [punitive damages] may be likened, in general terms, to culpable negligence in criminal proceedings. The higher burden of proof in a criminal suit, however, prevents the comparison of results in similar factual situations as a means of resolving civil disputes.
340 So.2d at 924.
I would approve the decision of the district court.
EHRLICH, J., concurs.
NOTES
[1] If the offensive word "gross" were deleted from a single sentence and "wanton and willful" substituted, the otherwise well written opinion would be unobjectionable, there would be no conflict of decisions, and this Court would not have jurisdiction. I note that the district court prefaced its analysis with citations to cases which do not rely on gross negligence, as a term of art, as a basis for punitive damages but, instead, apply the correct standard, wanton or willful and variations thereof. Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981); Ellis v. Golconda Corp., 352 So.2d 1221 (Fla. 1st DCA 1977), cert. denied, 365 So.2d 714 (Fla. 1978); Ojus Industries v. Brannam, 351 So.2d 1055 (Fla. 4th DCA), cert. denied, 352 So.2d 169 (Fla. 1977).
[2] The delivery gauge showed that exactly two thousand gallons were pumped. Later measurements revealed that the first tank contained 1,490 gallons and the second tank 2,014 gallons. There was hearsay testimony that the driver had been told to pump one thousand gallons into each tank. It is clear that the two tanks, between them, would have held the 2,000 gallons ordered and pumped.