484 So.2d 91 (1986)
GERBER CHILDREN'S CENTERS, INC., a Foreign Corporation, Appellant,
v.
Rex HARRIS, a Minor, by and through His Natural Parents, Jack Harris and Deborah Harris; and Jack Harris and Deborah Harris, Individually, Appellees.
No. 85-570.
District Court of Appeal of Florida, Fifth District.
March 6, 1986.
Robert L. Dietz of Zimmerman, Schuffield, Kiser & Sutcliffe, P.A., Orlando, for appellant.
Ronnie H. Walker and Glen D. Wieland of Walker, Miller & Ketcham, P.A., Orlando, for appellees.
COBB, Chief Judge.
The appellant, Gerber Children's Centers, Inc., appeals a punitive damage award against it. The award arose from a tort claim wherein a two-year-old child, Rex Harris, fell through a plate glass window, causing severe cuts and lacerations, at a child care center owned and operated by Gerber.
The evidence, construed most favorably to the appellant, indicated that at the time of Gerber's purchase of the premises, the awning window in the "toddler room," where Harris was injured, contained safety glass and was covered by a protective screen of hardware cloth. The window was about two feet, eight inches wide and five feet in length, with the bottom ledge about one foot from the floor. Due to vandalism, the window was repeatedly broken and replaced. During this process, the metal around the protective screens became bent and, eventually, the screen was not replaced. The original safety glass in the window was replaced with ordinary, single-strength window glass. The Gerber management, although warned by various employees about the danger of the window and the necessity for extra-strength glass, chose to rely on barriers (tables, rockers, etc.) being placed in front of the window. At the time of the accident, there was no protective screen for the window and no barrier in front of it. Harris fell into the window while walking with his walking horse.
The jury awarded $15,000 in compensatory damages, and $30,000 in punitive damages. The issue on appeal is the sufficiency of the evidence, challenged by a motion for directed verdict, to sustain the punitive damage award. Specifically, Gerber argues that the award cannot stand in view of White Construction Co., Inc. v. DuPont, 455 So.2d 1026 (Fla. 1984), wherein the Florida Supreme Court stated:
The character of negligence necessary to sustain an award of punitive damages must be of a "gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare *92 of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them."
455 So.2d at 1029, quoting Carraway v. Revell, 116 So.2d 16, 20, n. 12 (Fla. 1959).
The plaintiff in White was an independent truck owner and operator. He arrived at the defendant's mine to pick up a load of limerock. While he was waiting for his turn to load, the plaintiff left his four-axle tractor-trailer with the motor running, walked between the cab and the trailer, and began to do some minor repair work to the truck. An employee of the defendant, driving a C.A.T. 988 loader, weighing some 40 tons and standing approximately 20 feet high, began to back the loader around a large pile of limerock toward the plaintiff's trailer. As the loader, proceeding at top speed, approached the trailer, the driver looked back and, realizing he was going to hit the trailer, shouted a warning to the plaintiff. The loader struck the back end of the trailer and the impact apparently caused its gear to pop into forward position, forcing the trailer to advance and, in the process, roll over the plaintiff, who suffered permanent disability as the result of his injuries. The supreme court indicated that the evidence in the case showed that the loader's brakes had not been working for some time and that the defendant was aware of that fact. The court stated that although this evidence was sufficient to show the negligence of the defendant, it was not sufficient, as a matter of law, to submit the issue of punitive damages to the jury.
We cannot distinguish White. Failure to insulate small children from access to a window with ordinary, as opposed to safety, glass cannot be more flagrant and reckless than knowingly operating an 80,000 pound loader at top speed with no brakes in an area where people are working. In White the Florida Supreme Court reaffirmed its pronouncement in Carraway, "that the character of negligence necessary to sustain a conviction for manslaughter is the same as that required to sustain a recovery for punitive damages." White at 1028; Carraway at 20. The operative question, then, is whether we would sustain a manslaughter conviction in the instant case against the management agents of Gerber had Harris died from the cuts received in his fall. The answer is no.
The law in Florida in regard to punitive damages has evolved dramatically since Griffith v. Shamrock Village, 94 So.2d 854 (Fla. 1957), wherein the Florida Supreme Court allowed a landlord to be subject to a punitive damage award for failure to timely deliver to a tenant a telephone message regarding wedding plans of the tenant's brother. As a result of Griffith and similar decisions, the issue of punitive damages frequently has arisen in negligence cases where the character of negligence falls far short of that necessary to sustain a manslaughter conviction. With the advent of White, the pendulum now swings in the opposite direction. The punitive damage award herein is
REVERSED.
ORFINGER and SHARP, JJ., concur.