NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


FLORIDA POWER & LIGHT
COMPANY, a Florida Corporation,

    Appellant,

v.

                                 Case No. 2D18-2363

TRICIA DOMINGUEZ, as personal
representative of the Estate of Justin
Dominguez, Deceased,

    Appellee.
_____

Opinion filed October 25, 2019.

Appeal from the Circuit Court for Lee
County; Geoffrey H. Gentile, Judge.

Mark Hicks of Hicks, Porter, Ebenfeld, &
Stein, P.A., Miami; Michael R. D'Lugo of
Wicker, Smith, O'Hara, McCoy, & Ford,
P.A., Orlando; Tanya M. Lawson and Kevin
Donaldson of Florida Power & Light
Company, FPL Law Department, Juno
Beach; and Mitchell Lundeen of The
Chartwell Law Offices, LLP, Miami, for
Appellant.

Julie Littky-Rubin of Clark, Fountain, La
Vista, Prather, & Littky-Rubin, LLP, West
Palm Beach; and Ty G. Roland and Evan
D. Lubell of Aloia, Roland, Lubell, &
Morgan, PLLC, Fort Myers, for Appellee.

KHOUZAM, Chief Judge.

Florida Power & Light Company (FPL) appeals a wrongful death judgment on a jury verdict awarding $12.5 million in noneconomic damages and $15 million in punitive damages to Tricia Dominguez, as personal representative of the estate of Justin Dominguez. We affirm the award of noneconomic damages without comment but reverse the award of punitive damages.

This case arises from a tragic accident. On December 19, 2011, fifteen-year-old Justin Dominguez was climbing a tall stalk of bamboo in his neighbor's backyard. The stalk bent into a power line, resulting in Justin's electrocution and eventual death. The boy's mother, Tricia Dominguez, filed a wrongful death action against FPL, the party responsible for the power line. She alleged that FPL was negligent because it failed to follow its own maintenance and safety standards when it failed to remove the bamboo, a fast growing and uncontrollable plant, from the area near the line. She further alleged that FPL had been warned about the bamboo at the accident site but still failed to remove it. As a result of this negligence, she argued that FPL created a dangerous safety hazard that ultimately claimed her son's life.

In her punitive damages claim, Dominguez alleged that the scene of the accident was overgrown with trees and the power lines were not readily visible in the area around the bamboo. FPL's vegetation maintenance procedures explicitly recognize the risk of electrocution posed by foliage encroaching upon powerlines, including the danger to children who climb trees. Bamboo in particular is problematic because of its aggressive growth rate, so FPL designated it as a "critical removal" species that should be removed outright instead of merely trimmed when growing near

- 2 -

power lines.  Dominguez further alleged that FPL was made aware of the bamboo at the accident site by one of its auditing contractors, who recommended that it be removed. Despite this recommendation, FPL violated industry standards and its own vegetation maintenance policy by failing to remove this bamboo.  Dominguez asserted that this failure warranted punitive damages because it was the direct result of a corporate policy that prioritized cutting costs and corporate greed over the lives and safety of the general public.

Dominguez opted to pursue a direct corporate liability theory for punitive damages.  She argued that punitive liability attached to FPL through the behavior of Barry Grubb, the head of vegetation management for the region in which the accident occurred and the person identified by FPL as being the most knowledgeable about its vegetation management program.  Dominguez argued that Grubb was willfully ignorant about the circumstances and hazards surrounding Justin's death.  When answering interrogatories, he claimed that no trimming or other maintenance was necessary at the accident site even though he had never visited the scene himself.  At the time of his deposition years later, Grubb had still not visited the site and had no opinion on the adequacy of the maintenance there.  He also testified that he was not familiar with language in FPL's vegetation maintenance rules about the danger of electrocution from foliage near power lines.  In sum, the regional vegetation manager had taken a see-nothing, know-nothing approach.  At the conclusion of trial, the jury agreed with this assessment and awarded $15 million in punitive damages.

Direct liability is one of two theories recognized in Florida through which a corporation may be liable for punitive damages.  Schropp v. Crown Eurocars, Inc., 654

- 3 -

So. 2d 1158, 1159 (Fla. 1995). Under the direct theory, liability for gross negligence is established if the corporation itself engaged in conduct that was "so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct," and that conduct contributed to the loss of the injured party. § 768.72(2)(b), (3)(c), Fla. Stat. (2013). Moreover, because a corporation cannot act on its own, "there must be a showing of willful and malicious action on the part of a managing agent of the corporation" to establish direct punitive liability. Partington v. Metallic Eng'g Co., Inc., 792 So. 2d 498, 501 (Fla. 4th DCA 2001) (citing Schropp, 654 So. 2d at 1159).

There is relatively little Florida case law defining a "managing agent" for purposes of direct corporate liability. However, the cases that do address this issue suggest that such an agent is more than just a manager or midlevel employee. See Ryder Truck Rental, Inc. v. Partington, 710 So. 2d 575, 576 (Fla. 4th DCA 1998) ("[A] job foreman is not, as required for imposing direct liability, a managing agent of the company."); Capital Bank v. MVB, Inc., 644 So. 2d 515, 521 (Fla. 3d DCA 1994) (citing Bankers Multiple Line Ins. Co. v. Farish, 464 So. 2d 530 (Fla.1985)) (holding that one of several bank vice presidents, who was not on the board of directors or the loan committee, did not qualify as a managing agent); Pier 66 Co. v. Poulos, 542 So. 2d 377, 381 (Fla. 4th DCA 1989) (holding that a hotel manager was not a managing agent of the corporation that owned the hotel). Rather, a managing agent is an individual like a "president [or] primary owner" who holds a "position with the corporation which might result in his acts being deemed the acts of the corporation." Taylor v. Gunter Trucking Co., Inc., 520 So. 2d 624, 625 (Fla. 1st DCA 1988).

- 4 -

Here, Dominguez sought punitive damages under the direct liability theory through the alleged gross negligence of Barry Grubb, a regional supervisor in FPL's vegetation management program. At trial, Grubb was identified as the FPL employee with the most knowledge about this program. However, he testified that he was only in charge of the program for a limited geographical area. He also testified that he has a manager and that he does not make policy decisions relating to the program. While his position certainly comes with significant managerial power, we hold that Grubb does not qualify as a managing agent of FPL. Overseeing only a portion of FPL's arborist program, which is itself ancillary to FPL's primary function of providing electric power, Grubb is at best a midlevel employee more akin to one of the vice presidents in Capital Bank or the hotel manager in Poulos than to a corporate officer or official who could represent FPL as a whole.[1] Because Grubb is not a managing agent for purposes of direct punitive liability, the award of punitive damages in this case must be reversed.

Even if Grubb qualified as a managing agent, punitive damages are only warranted if there is evidence of negligence on Grubb's part "equivalent to the conduct involved in criminal manslaughter." Valladares v. Bank of Am. Corp., 197 So. 3d 1, 11 (Fla. 2016) (citing Como Oil Co., Inc. v. O'Loughlin, 466 So. 2d 1061, 1062 (Fla. 1985)). Indeed, punitive conduct must be "so reckless or wanting in care that it constitute[s] a

_____

[1]We note that the trial judge was concerned by the holding in Winn-Dixie Stores, Inc. v. Robinson, 472 So. 2d 722, 723-24 (Fla. 1985), in which the Florida Supreme Court held that direct corporate liability applied where an assistant store manager participated in the wrongful arrest of a store patron. That opinion may be read to imply that the assistant manager of a grocery store can be a corporate agent for purposes of direct liability. However, the issues litigated in the case did not include whether the assistant manager was a "managing agent," and the district court below found that the corporate defendant had waived that argument. See Robinson v. Winn-Dixie Stores, Inc., 447 So. 2d 1003, 1005 (Fla. 4th DCA 1984).

conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." § 768.72(2)(b). See also BDO Seidman, LLP v. Banco Espirito Santo Intern., 38 So. 3d 874, 876-77 (Fla. 3d DCA 2010).

Here, the trial testimony established that Barry Grubb was not directly involved with the accident and did not know about the details of Justin's death until years after the fact. Grubb also seemed unaware of specific FPL safety standards cited by Dominguez despite being identified as the person most knowledgeable about FPL's vegetation program. Whatever negligence a jury may infer from this evidence, it certainly does not rise to the level of "reckless disregard of human life" or an "entire want of care, which would raise the presumption of a conscious indifference to consequences." Air Ambulance Prof'ls, Inc. v. Thin Air, 809 So. 2d 28, 31 (Fla. 4th DCA 2002) (quoting Am. Cyanamid Co. v. Roy, 498 So. 2d 859, 861-62 (Fla. 1986)). Florida courts have reversed punitive damage awards under facts involving similar or more egregious conduct than that alleged in this case. See Como Oil, 466 So. 2d at 1061-62 (holding that serious injuries to plaintiff from a gasoline explosion, involving an unsafe gas truck and a driver who negligently overfilled an underground gas tank, did not warrant punitive damages); White Constr. Co., Inc. v. Dupont, 455 So. 2d 1026, 1027-28 (Fla. 1984) (holding that accident causing permanent disability to plaintiff did not warrant punitive damages despite defendants' knowledge that the offending loading vehicle's brakes had been defective for some time), receded from on other grounds in Murphy v. Int'l Robotic Sys., Inc., 766 So. 2d 1010 (Fla. 2000); Estate of Williams ex rel. Williams v. Tandem Health Care of Fla., Inc., 899 So. 2d 369, 371-72, 377-78 (Fla. 1st DCA 2005) (holding that death of a nursing home resident from a fall

did not warrant punitive damages even though resident had fallen before and defendant took no steps to prevent future falls); <u>Gerber Children's Centers, Inc. v. Harris ex rel.</u>, 484 So. 2d 91, 91-92 (Fla. 5th DCA 1986) (holding that injuries sustained by a toddler who fell out of a window did not warrant punitive damages even though several employees warned defendant's management that the window's glass was unsafe).  As in those cases, Dominguez has not demonstrated a willful and malicious action on the part of Barry Grubb or FPL that is equivalent to criminal manslaughter and punitive damages should not have been awarded.

Therefore, because Dominguez has not demonstrated punishable conduct by a managing agent of FPL, we reverse the award of punitive damages.  We affirm in all other respects.

Affirmed in part, reversed in part, and remanded.


LUCAS and SMITH, JJ., Concur.