116 So.2d 16 (1959)
Royal CARRAWAY, Petitioner,
v.
Guy REVELL, individually and d/b/a Revell Motor Company, and Associates Discount Corporation, an Indiana Corporation authorized to do business in the State of Florida, Respondents.
Supreme Court of Florida.
November 25, 1959.
*18 Donald O. Hartwell of Hall, Hartwell & Douglass, Tallahassee, for petitioner.
Keen, O'Kelley & Spitz, A. Frank O'Kelley and H.O. Pemberton, Tallahassee, for respondents.
DREW, Justice.
The petition for certiorari alleges a direct conflict between the questioned opinion of the District Court[1] and that of this Court in Franklin v. State.[2] Moreover, the question has been certified to this Court by the District Court as one of great public interest.[3]
The deceased (the minor son of petitioner, plaintiff below) was riding as a guest passenger in an automobile owned by the respondent (defendant below) and operated by Fountain Bryant Cone, Jr., with his knowledge and consent. The case was tried without a jury and resulted in a verdict and judgment in favor of respondent.
The trial judge denied plaintiff's motion for a new trial, assigning as his reason, among others, "that gross negligence in a guest passenger civil action is the same in legal contemplation as culpable negligence in a manslaughter case and that, in order to sustain a finding of liability in a guest passenger case, there must be that degree of negligence which would be sufficient to support a manslaughter conviction when there is a death involved." The trial judge recited the only distinction between the consideration that a court should give to an issue involving gross negligence in a civil action and culpable negligence in a criminal case is the quantum of proof, obviously meaning that in the former the proof must be by a preponderance of the evidence, while in the latter it must be beyond a reasonable doubt.
The district court approved the action of the trial court in an exhaustive opinion. The conclusion reached by the district court may be summarized in the following language taken from the last two paragraphs of the opinion:
"From the foregoing analysis we are of the opinion that the pyramiding progression of case law emanating from the diverse factual situations which are inherent in this field of the law has established that the character of negligence necessary to sustain a conviction for manslaughter is the same as that required to sustain a *19 recovery for punitive damages, or damages resulting from gross negligence or wilful and wanton misconduct under the guest statute. * * *
"* * * We have carefully reviewed the evidence but agree with the trial judge that it falls short of sustaining the burden of proof within the contemplation of the applicable provisions of law." (Emphasis supplied.)
The correctness of the holding of the trial court and the district court is, therefore, squarely presented for our consideration. While a direct conflict is alleged, we are not restricted to a determination of that one proposition. The certification of the case to us as one of great public interest, extends our scope of review to a determination of whether the opinion and judgment of the district court is correct.[4]
It has been said that the concept of dividing negligence in degrees (or perhaps, more appropriately, kinds) by our courts has resulted in one of the most controversial doctrines in Anglo-American jurisprudence.[5] In Bridges v. Speer,[6] we referred to this dilemma with the observations that the courts had encountered great difficulty in attempting to draw any clear and distinct line between simple and gross negligence and concluded "Perhaps no rule can ever be devised which will definitely separate one from the other." In that case we said that the great difficulty arose out of the fact that it related to different degrees of the same conduct. Different degrees of negligence are far easier to demonstrate than to define.[7] The same conduct, in different settings, could and does result in different degrees of liability.[8] This is so, not only in cases arising under the so-called guest statute, but in many other situations. For instance in the determination of the legal rights and duties arising between an owner and invitees, licensees and trespassers, for the same act or omission, an owner may be liable to an invitee but not to a licensee;[9] to a licensee but not to a trespasser.[10]
In all of the examples and situations mentioned, the kinds of negligence have been discussed in their relation to liabilities created by the law for the redress of private wrongs, and, in which in its broadest aspect the public generally is not concerned. When we apply such degrees *20 or kinds of negligence to those actions in which the public itself is concerned, we are, in fact, dealing with another and different concept in the field of negligence.[11] We agree with the district court [112 So.2d 75] "that the character of negligence necessary to sustain a conviction for manslaughter is the same as that required to sustain a recovery for punitive damages" but we do not agree with the remainder of the court's holding, viz.: "or damages resulting from gross negligence or wilful and wanton misconduct under the guest statute." This is too broad a leap.
There is a real affinity between the character (or kind or degree) of negligence necessary to recover punitive damages or to sustain or warrant a conviction of manslaughter.[12] Both have, as a basic purpose, the punishment of the offender. The offender in a manslaughter action may be deprived of his liberty or property by the State while the offender in an action for that kind of negligence justifying the imposition of punitive damages is deprived of his property  not as compensation to the injured party but as punishment  ergo, both are punishment and partake of public wrongs, to a greater or less degree.[13] On the other hand, actions under the guest statute relate to purely private wrongs where the objective is to require the wrongdoer to compensate the injured party for the actual damages he sustains. In statutory manslaughter, the element of criminal intent (ordinarily an essential element of a crime) is supplanted by culpable negligence.[14] But there is no rational basis to hold that such conduct is a prerequisite to recovery under the guest statute. Nor do we agree with the district court that the sum of our previous opinions on this subject would  or any of them alone  logically justify this conclusion.
Petitioner argues, among other things, that the opinion of the district court is in direct conflict with the case of Franklin v. State, 1935, 120 Fla. 686, 163 So. 55, 56, which held:
"`Gross negligence' and `culpable negligence' are not necessarily synonymous, though culpable negligence might be gross negligence and gross negligence might be culpable negligence."
The district court points out that research failed to reveal any decision subsequent to the adoption of the guest statute in which the above quoted principle had been followed or adhered to. A re-examination of many, although, of course, not all of the subsequent cases dealing with gross negligence (particularly as it is used and applied in the guest statute, F.S.A. § 320.59) does show that we have not used the exact language employed in the quoted case but we fail to find any support in these cases for the conclusion reached by *21 the district court. While loose language may have been employed in some of these cases, we think it is easily demonstrable from many subsequent decisions that we have held that conduct can exist which is termed gross negligence which will not justify the imposition of punitive damages and that this conclusion necessarily means that "gross negligence" and "culpable negligence" are not necessarily synonymous. Culpable negligence in a criminal action must attain a degree which will warrant imposition of punitive damages in a civil action. Gross negligence, while it may be within the area of culpable negligence, such fact by no means proves that all gross negligence must be defined as culpable negligence.[15] The crime of manslaughter may exist without criminal intent when culpable negligence is substituted therefor but we cannot support the view that the term "gross negligence" necessary to sustain a judgment under the guest statute must be that type of culpable negligence which has been substituted for the element of criminal intent in statutory manslaughter nor do we think the purpose and history of such legislation lends any support to that view.[16]
In the many cases re-examined we have never held that culpable negligence and gross negligence were synonymous. We have repeatedly pointed out the distinction. We have used such expressions as "gross negligence, not amounting to such wanton and reckless indifference to the rights of others as to be equivalent to an intentional violation of them will not warrant punitive damages."[17] Moreover, we have distinctly held that gross negligence will not justify the imposition of punitive damages.[18] Having held, as we have pointed out, that "gross negligence" and "wilful and wanton misconduct" as used in the guest statute are synonymous, the conclusion is inevitable that an approval of the judgment of the circuit court and of the district court would mean that in all actions under the guest statute the complaining party, if successful, would necessarily be entitled to recover punitive as well as compensatory damages or, to put it another way, in every case under the guest statute unless the plaintiff could prove that he was entitled to punitive damages, he would be entitled to nothing.
It is obvious to us that the observation of the district court "that the pyramiding progression of case law emanating from the diverse factual situations which are inherent in this field of the law" established in its mind the conclusion which it reached. We think this observation and the conclusion resulted from a misinterpretation of the holding of this Court in the cases to which it refers and particularly the cases of Jackson v. Edwards,[19] and Miller v. State,[20] upon which the district court principally bases its ultimate conclusion. Jackson v. Edwards was an action for damages under the guest statute while Miller v. State was a manslaughter case. It is true that in Jackson v. Edwards we held that driving a truck at night at an illegal and excessive rate of speed of 60 miles per hour in or near the center of the highway, not allowing sufficient space for an approaching southbound truck to pass in safety, thereby causing a collision between said trucks which resulted in injury to the guest passenger, did "show that the driver of the truck was at least guilty of *22 gross negligence, if indeed, he was not guilty also of wilful and wanton misconduct" sufficient, so the court later said in its opinion, to support a conviction of manslaughter. The court went on to say that, in an earlier decision, the law had been established that "gross negligence" and "wilful and wanton misconduct" as used in the guest statute were synonymous. Moreover, in that same opinion, it is stated: "As we understand the authorities, there is a distinction between gross negligence and wilful misconduct, * * *". This case was decided about three years after the guest statute was enacted. As we have stated earlier in this opinion, it is subject to the criticism that loose language was used in connection with the discussion of the subject. Nevertheless, we think the conclusion is justified (particularly when considered in the light of many subsequent decisions) that, at most, the holding of this case was that the allegations of the declaration contain sufficient facts to show gross negligence under the guest statute because the court said such acts could, under previous decisions of the court, well be sufficient to support a conviction for manslaughter. This was not the same, however, as holding that gross negligence under the guest statute had to be of such character as to support a conviction for manslaughter under the manslaughter statute.
Miller v. State, as we have pointed out, is a criminal prosecution for manslaughter. The distinction between the degree of negligence necessary to support a conviction in such cases and under the guest statute where private wrongs are involved, we have heretofore pointed out. In the Miller case we held that the evidence was legally insufficient to support the conviction of Miller for manslaughter. We said "the facts in this case under decisions of this Court are far from sufficient to sustain liability of the defendant were this a civil action under the automobile guest statute * * *". [75 So.2d 313.] We said that the conduct shown by the record standing alone amounted at most to "no more than an error of judgment and is therefore far short of the degree of culpable and wanton misconduct which must be shown to sustain the conviction." We further stated "[d]ecisions arising under our guest statute must necessarily be relevant to cases in which there is prosecution for manslaughter for the operation of an automobile. This is true because there can be no doubt that the culpable conduct to sustain imprisonment must be of a kind sufficient at least to sustain an action for civil liability under our guest statute." We hold, therefore, that under neither of the cases principally relied upon by the district court is its conclusion justified. We hold that a guest under the statute may not lawfully recover from an owner or operator of a vehicle for simple or ordinary negligence; that he may recover for gross negligence which is that kind or degree of negligence which lies in the area between ordinary negligence and wilful and wanton misconduct sufficient to support a judgment for exemplary or punitive damages or a conviction for manslaughter. In doubtful cases, the question of whether such negligence is ordinary or gross is, as we have heretofore held, one which under appropriate instructions should be submitted to the jury.
We conclude by reaffirming what we said in Bridges v. Speer, supra, viz.:
"We think the rule which would more nearly solve the problem than any other would be one which recognized that simple negligence is that course of conduct which a reasonable and prudent man would know might possibly result in injury to persons or property whereas gross negligence is that course of conduct which a reasonable and prudent man would know would probably and most likely *23 result in injury to persons or property. To put it another way, if the course of conduct is such that the likelihood of injury to other persons or property is known by the actor to be imminent or `clear and present' that negligence is gross, whereas other negligence would be simple negligence." [79 So.2d 682.]
Certiorari is granted, the opinion of the district court, insofar as it is in conflict with what we have said here, is overruled and the cause is remanded to the district court for further proceedings in accordance with this opinion.
THOMAS, C.J., and TERRELL, HOBSON and O'CONNELL, JJ., concur.
NOTES
[1] Fla. 1959, 112 So.2d 71.
[2] 1935, 120 Fla. 686, 163 So. 55.
[3] The certificate appears in the per curiam order appended to the case under review cited in footnote No. 1. Consult Susco Car Rental System of Fla. v. Leonard, Fla., 112 So.2d 832, for a discussion of the power of the district courts to certify cases for review under Art. V, § 4, Florida Constitution, F.S.A.
[4] Supra, note 3.
[5] Degrees of Negligence, 6 So.Cal.L.Rev. 91 (1933).
[6] Fla. 1955, 79 So.2d 679, 682.
[7] "The line between gross and simple negligence is a difficult one to draw. Under our system of jurisprudence which recognizes the jury system as a basic concept in the administration of justice, we think the wise course to follow is one which leaves this question in the hands of the jury in those instances where the line is indistinct." From Farrey v. Bettendorf, Fla. 1957, 96 So.2d 889, 895.
[8] "In Faircloth v. Hill, supra, [Fla.], 85 So.2d 870 at page 872, we said:

"`We have held that all of the circumstances of each case entering into the particular happening must be considered in order to determine whether liability exists. See Dexter v. Green, Fla. 1951, 55 So.2d 548. In the same case we held that while each separate act involved in the drama might not in and of itself establish gross negligence, nevertheless, the entire course of conduct of the automobile driver under all of the circumstances and in the light of all of the related factors taken collectively might well establish the existence of gross negligence by pointing to the conclusion that the driver of the car knew or should have known that his conduct placed others in danger of grave injury and that under all of the circumstances he could be found guilty of a conscious indifference for the safety of others.'" From Farrey v. Bettendorf, Fla. 1957, 96 So.2d 889, 895.
[9] McNulty v. Hurley, Fla. 1957, 97 So.2d 185, 187; City of Boca Raton v. Mattef, Fla. 1956, 91 So.2d 644, 648.
[10] Byers v. Gunn, Fla. 1955, 81 So.2d 723, 725.
[11] Pound, Outlines of Lectures on Jurisprudence (1928) pp. 60-71. As cited in Prosser on Torts, 16 (1941).
[12] The character of negligence necessary to sustain an award of punitive damages must be of "a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them." This definition "appears to be in line with the weight of authority as to the character of negligence necessary to be shown to sustain criminal liability." Mr. Chief Justice Brown in Cannon v. State, 1926, 91 Fla. 214, 107 So. 360, 363. Cf. Jackson v. State, Fla. App. 1958, 100 So.2d 839; Porter v. State, Fla. 1956, 88 So.2d 924.
[13] Cooley on Torts, pp. 159-160 (1932).
[14] Hulst v. State, 1936, 123 Fla. 315, 166 So. 828, 829.
[15] Sheldon Elliott, supra, So.Cal.L.Rev., Degrees of Negligence.
[16] Consult 55 Mich.L.Rev. 1197 for a review of these acts in the 26 states that have adopted them, particularly with reference to the words used in describing the kind of negligence warranting recovery.
[17] Dowling Lumber Co. v. King, 1911, 62 Fla. 151, 57 So. 337.
[18] Florida Southern Railway Co. v. Hirst, 30 Fla. 1, 11 So. 506, 16 L.R.A. 631.
[19] 1940, 144 Fla. 187, 197 So. 833, 837.
[20] Fla. 1954, 75 So.2d 312.