529 So.2d 1191 (1988)
Louis GERENTINE and Michael Gerentine, As Personal Representatives of the Estate of Shirley Ann Gerentine, Deceased, Appellants,
v.
COASTAL SECURITY SYSTEMS, Robert McComb, Phillip Goodwin, Louis Huntley and William Huntley, Appellees.
No. 86-817.
District Court of Appeal of Florida, Fifth District.
July 21, 1988.
Rehearing Denied August 23, 1988.
*1192 Gary L. Shockey, of Spence, Moriarity & Schuster, Jackson, Wyo., and Mel R. Martinez, Orlando, for appellants.
Leslie King O'Neal, of Markel, McDonough & O'Neal, Orlando, for appellees.
ORFINGER, Judge.
This is an appeal from a final order dismissing appellants' wrongful death action. Because it now appears that the second amended complaint reveals the existence of a cause of action,[1] we reverse.
Appellants' decedent, Shirley Ann Gerentine, was abducted and murdered on September 14, 1983 while she worked alone as a clerk in a Jiffy convenience store, No. 137, in Orlando, Florida, owned by Huntley Jiffy Stores, Inc. (Jiffy). The personal representatives of her estate filed suit against Coastal Security Systems (Coastal) which had installed the security system in the store, Louis Huntley and William Huntley, respectively president and secretary of Jiffy, Phillip Goodwin and Robert McComb, respectively the district manager and division manager of Jiffy. In a long, rambling and extremely verbose second amended complaint, the plaintiffs alleged, in separate counts as to each defendant, that defendants Huntley, Goodwin and McComb had each been guilty of gross negligence in failing to provide Shirley Ann Gerentine with a safe place to work. Boiled down to its bare essentials, plaintiffs alleged that Jiffy Store No. 137 was a frequent target for robberies, having been robbed at least four times prior to the time Shirley Ann Gerentine was murdered and that despite the knowledge of each of these defendants that the store was located in a high crime area, they had taken positive action to reduce security and had affirmatively decided not to create and enforce any policy to deter or prevent robbery. The complaint further alleged as to each defendant that they knew, based on prior experience at other stores, that certain nighttime hours were considered high risk hours and that *1193 these defendants were responsible for the formulation and implementation of a policy which discouraged adequate staffing of stores like No. 137 during such high risk hours. The complaint further alleged that these defendants "made a conscious deliberate choice not to formulate or implement a policy to have more than one clerk on during high risk hours of the day. In doing so and in light of [their] knowledge of prior robbery reports at Store # 137 [these defendants] consciously, knowingly, intentionally and willfully exposed Shirley Ann Gerentine to a known risk of robbery and known risks of personal injury and death during the commission of such robberies." and that these acts were intentional and grossly negligent and were acts and omissions which were likely to result in grave injury in the face of the known clear and present dangers of robbery and abduction.
As to Coastal Securities, it was alleged that it had installed a security system in Store No. 137, that said system had been negligently installed, or was inadequate to deter or prevent robbery, that it did not operate properly on the night Shirley Gerentine was abducted, that Coastal knew or should have known that the system installed was inadequate for its intended purpose and thus unreasonably exposed Shirley Gerentine to a known risk of harm. The complaint then sought punitive damages against all defendants.
In Streeter, the supreme court disapproved the earlier cases of Dessert v. Electric Mutual Liability Insurance Company, 392 So.2d 340 (Fla. 5th DCA), review denied, 399 So.2d 1141 (Fla. 1981) and Kaplan v. Circuit Court of the Tenth Judicial Circuit, 495 So.2d 231 (Fla. 2d DCA 1986), and held that section § 440.11(1), Florida Statutes (1981), the same statute which is applicable here, unambiguously states the legislative intent to impose liability on all employees who act with gross negligence with respect to their fellow employees, regardless of the grossly negligent employee's corporate status. Thus, if proper allegations of gross negligence are made against the Huntleys, Goodwin and McComb, a cause of action is stated. Since Coastal is not a fellow employee, allegations of simple negligence would suffice.
Although verbose and replete with evidentiary rather than ultimate facts, those portions of the second amended complaint to which we have alluded appear to be sufficient to make a claim of gross negligence on the part of the various corporate employees which, if sustained at trial, would support a judgment against them under Streeter. Gross negligence was defined by this court in Weller v. Reitz, 419 So.2d 739 (Fla. 5th DCA 1982) as follows:
[S]imple negligence is that course of conduct which a reasonable and prudent man would know might possibly result in injury to persons or property whereas gross negligence is that course of conduct which a reasonable and prudent man would know would probably and most likely result in injury to persons or property. To put it in another way, if the course of conduct is such that the likelihood of injury to other persons or property is known by the actor to be imminent or "clear and present" that negligence is gross, whereas other negligence would be simple negligence. Carraway v. Revell, 116 So.2d 16 (Fla. 1959); Bridges v. Speer, 79 So.2d 679, 682 (Fla. 1955). Gross negligence consists of a conscious and voluntary act or omission which is likely to result in grave injury when in the face of a clear and present danger of which the alleged tort-feasor is aware... . Accordingly to establish a case admissible to a trier of fact there must be a prima facie showing of a composite of circumstances, which, together, constitute a clear and present danger; there must be a prima facie showing of an awareness of such danger; and there must be a prima facie showing of a conscious, voluntary act or omission in the face thereof which is likely to result in injury. Glaab v. Caudill, 236 So.2d 180 (Fla. 2d DCA 1970).
Weller, 419 So.2d at 741.
The trial court was correct in its determination that the count requesting punitive damages did not state a cause of action. What is required to support a claim for punitive damages is set forth in White Construction Co., Inc. v. Dupont, *1194 455 So.2d 1026 (Fla. 1984) where the court said:
The character of negligence necessary to sustain an award of punitive damages must be of a "gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference of consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them".
Id. at 1029. See also, Carraway v. Revell, 116 So.2d 16, 20, n. 12 (Fla. 1959). Mere allegations of gross negligence do not suffice. Because there is nothing in the pleadings to indicate that a claim for punitive damages could meet the Dupont test, the dismissal of that count without leave to amend (which leave was not requested) was not erroneous.
The trial court also found that the second amended complaint in its entirety, violated the rules of pleading as set forth in section 1.110(b), Florida Rules of Civil Procedure, in that each count, not only incorporated by reference the preliminary allegations of the complaint, but also incorporated by reference all the allegations of each preceding count. By the time a defendant reached the sixth count of the complaint, he would find himself faced with 72 previous paragraphs, many with numerous subdivisions, replete with evidentiary facts and together forming a total morass which would make it difficult if not impossible to respond to. The First District properly criticized such procedure in Chaires v. North Florida National Bank, 432 So.2d 183 (Fla. 1st DCA 1983) when it said:
Finally, we feel constrained to address a pleading practice followed by some practitioners which practice compounds the problems of the trial court and opposing counsel in sorting out the various causes of action asserted in multi-count complaints. The complaints which preceded the "Third Amended Complaint" were drafted in such a manner that each succeeding count incorporated by reference not only the paragraphs contained in the complaint's preliminary allegations but also all of the paragraphs contained in each of the preceding counts. Such is improper. By the time the beleaguered reader gets to the fifth count, he is having to cope with presumably five causes of action asserted in one count. This practice is an unnecessary hindrance to trial courts' efforts to determine the facial validity of the various causes being asserted and serves only to confuse and delay.
Id. at 185. See also Frugoli v. Winn Dixie Stores, Inc., 464 So.2d 1292 (Fla. 1st DCA 1985).
Because the second amended complaint did not provide short and plain statements of the ultimate facts as required by the rules of pleading, the court correctly dismissed it. However, because a cause of action can be gleaned from said second amended complaint, the court should have permitted the plaintiffs another opportunity to amend it except for the count claiming punitive damages. The final judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
AFFIRMED in part, REVERSED in part and REMANDED.
SHARP, C.J. and COBB, J., concur.
NOTES
[1] We initially affirmed the dismissal, see Gerentine v. Coastal Security Systems, 502 So.2d 1356 (Fla. 5th DCA 1987), but this decision was reversed by the supreme court in Gerentine v. Coastal Security Systems, 520 So.2d 245 (Fla. 1988), which remanded the case to this court for reconsideration in light of the decision in Streeter v. Sullivan, 509 So.2d 268 (Fla. 1987).