621 So.2d 534 (1993)
Clarence BEHN, Appellant,
v.
STATE of Florida, Appellee.
No. 91-1950.
District Court of Appeal of Florida, First District.
July 13, 1993.
*535 Nancy A. Daniels, Public Defender, Lynn A. Williams, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., Marilyn McFadden, Asst. Atty. Gen., for appellee.
KAHN, Judge.
Appellant challenges his judgment and sentence for manslaughter by culpable negligence. Section 782.07, Florida Statutes (1989). He asserts, among other things, that the court erred in denying his motion for judgment of acquittal. We reverse the trial court's order denying appellant's motion for judgment of acquittal.
Viewing the evidence and all reasonable inferences in favor of the state, the party against whom the motion for judgment of acquittal was filed, the record reveals that on the morning of August 18, 1989, appellant was driving an unloaded 18-wheel tractor trailer south on Highway 301 in Alachua County. He went through a red light at the intersection of Highway 301 and State Road 26 and struck a car driven by Louis Able going east on State Road 26. The testimony of eyewitnesses Gale Kane and Evelyn Burke establishes that Able delayed before reacting to the green light and pulled out into the intersection only seconds before the collision. Physical evidence at the scene demonstrated that Behn applied his emergency brakes 35 feet before the impact. Reconstruction expert J. Patrick Parrish testified that appellant was 3.9 seconds from the point of impact when the victim's car began pulling out. As a result of the collision, Mr. Able and Gladys Waits, a passenger in the car, died. An officer from the Department of Transportation inspected appellant's truck after the accident and found two brakes on the second axle inoperable and all other brakes except one out of adjustment. He indicated the driver would have been able to tell that the brakes were out of adjustment. Expert Parrish indicated that even if appellant had proper brakes and began braking when he did, there still would have been a collision, although probably not a fatal one.[1]
*536 The state chose to prosecute Mr. Behn under the culpable negligence standard of section 782.07, Florida Statutes (1989), which imposes a greater showing than that required to secure a conviction under the vehicular homicide statute, section 782.071, Florida Statutes (1989). To support the allegations of culpable negligence contained in the information, the state asserted that Behn ran a red light, and that at the time of the accident, Behn was knowingly driving with brakes which were out of adjustment. As we have indicated, the state did, in fact, prove both of these allegations. We conclude, however, that the conduct complained of did not meet the standard required under the manslaughter statute for culpable negligence. The controlling case law indicates that operation with deficient brakes, even when coupled with a traffic infraction, does not rise to the level of criminality required to support a manslaughter conviction as charged under the statute.
Even were we able to conclude that operation of the truck with defective brakes could support the conviction, it appears that the proof presented by the prosecution fails to establish a causal connection between the defective brakes and the fatalities. Mr. Parrish, qualified by the state as an accident reconstructionist, provided detailed information (albeit based upon some inaccuracies, see note 1, supra) concerning the collision itself. He went further, however, and stated that if Mr. Behn had proper brakes and began applying them at the time he actually did, the impact between the truck and Mr. Able's car would have been delayed for a fraction of a second and thus "it would have been an impact of the left front of Mr. Behn to the left rear of Mr. Able, and in that instance, the collision would not have been a fatal one to any of the occupants." The defense neither objected to, nor moved to strike, this testimony. The motion for judgment of acquittal, however, requires us to look at the sufficiency of the evidence.
Nothing in the state's case suggests that Mr. Parrish has expertise in the fields of medicine, physiology, or biomechanics. Nowhere in his testimony does he offer any solid support for the supposition that a delay in the collision[2] would have altered the fatal consequences. Such a conclusion, to be valid, would require, at least, knowledge of the dynamics and biomechanics of the human beings involved in the collision.
This court has previously rejected the sufficiency of such unsupported, and unobjected to, medical evidence in a murder prosecution. In Wright v. State, 348 So.2d 26 (Fla. 1st DCA 1977), cert. denied, 353 So.2d 679 (Fla. 1977), the testimony of the medical examiner was the only testimony that tended to establish premeditation. In that case, the medical examiner, a qualified physician offered as an expert in the field of forensic pathology, testified that serious injuries had been inflicted by the accused upon the deceased, prior to the ultimate death by suffocation. This court found such evidence to be beyond the competence of the medical examiner to give, and further noted that this testimony was the only evidence of premeditation. The court concluded:
The effect on the verdict of the evidence of the expert here was so obvious and extensive that its admission falls within the definition of fundamental error which this Court may and should review in the interest of justice, regardless of objection at the trial level.
348 So.2d at 31.
In the present case, we conclude that Parrish's opinions concerning the extent of injuries that would have been received by the occupants of Able's car, had Behn's brakes been fully operative, were beyond his competence and should not have been considered in determining whether the state presented sufficient evidence to withstand a motion for judgment of acquittal on the manslaughter charge.
Even assuming sufficient evidence of causation, however, these convictions will not stand.
*537 The facts in White Construction Co., Inc. v. Dupont, 455 So.2d 1026 (Fla. 1984), are analogous to the instant case. White Construction Co. owned a CAT 988 loader, weighing some forty tons and standing approximately 22 feet high. The loader's brakes had not been working for some time and White Construction was aware of that fact. The loader proceeded at top speed towards the victim's truck and could not stop. The loader struck the truck and caused the truck to run over the truck driver who was doing some minor repair work on the truck. The truck driver suffered permanent injuries. The jury awarded compensatory and punitive damages to the victim and his wife. This court upheld damages, and the supreme court reversed. The supreme court held:
The evidence in this case showed that the loader's brakes had not been working for some time, and that the petitioners were aware of this fact. Although this evidence would be sufficient to show that the petitioners were negligent, it is not sufficient, as a matter of law, to submit the issue of punitive damages to the jury.
* * * * * *
In Carraway [v. Revell, 116 So.2d 16 (Fla. 1959)] we made it clear that something more than gross negligence is needed to justify the imposition of punitive damages... . In a footnote, we set forth the standard to be met to justify the imposition of punitive damages upon a defendant:
The character of negligence necessary to sustain an award of punitive damages must be of a `gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them. Id. at 20 n. 12 (citations omitted)
... Thus, applying the Carraway standard to the facts of the instant case, as we stated above, under no view of the evidence presented here would it be proper to impose punitive damages upon petitioners ...
White Construction Co., Inc. v. Dupont, 455 So.2d at 1028-1029.
Although White Construction Co., Inc. and Carraway were punitive damages cases, they held "that the character of negligence necessary to sustain a conviction for manslaughter is the same as that required to sustain a recovery for punitive damages." Carraway, supra at 22; White Construction Co., Inc., supra at 1028. See also Graham v. State, 362 So.2d 924, 925 (Fla. 1978) ("While criminal responsibility may rest on acts of negligence, such negligence is generally of a higher degree than that required to establish civil liability... . [T]he degree of negligence required to sustain imprisonment should be at least as high as that required for imposition of punitive damages in a civil action"). In applying the above standard, every case of manslaughter by culpable negligence must be determined upon the facts and the totality of circumstances peculiar to that case. Filmon v. State, 336 So.2d 586 (Fla. 1976); Scarborough v. State, 188 So.2d 877 (Fla.2d DCA 1966).
Applying the above cases to the facts of this particular case, under no view of the evidence would it be proper to convict appellant of manslaughter by culpable negligence. The state failed to prove a course of conduct showing reckless disregard of human life or a conscious indifference to the consequences. Although knowingly operating a truck with bad brakes is negligent, it does not rise to the level of culpable negligence. See White Construction Co., Inc., supra. The state points to no evidence that appellant was under the influence of alcohol or other drugs or that he was swerving, speeding or otherwise driving recklessly such as to demonstrate culpable negligence. Resolving all inferences in favor of the state, we conclude that appellant is guilty of running a red *538 light and driving a truck with two inoperable brakes and several brakes out of adjustment. However, as the supreme court held in Logan v. State, 592 So.2d 295, 299 (Fla. 5th DCA 1991): "The commission of traffic infractions is not sufficient, without more, to support a conviction for culpable negligence manslaughter." See also White Construction Co., Inc., supra (use of 40 ton loader with knowledge that its brakes had not been working for some time sufficient to show negligence but not sufficient to support punitive damages [or culpable negligence]); Peel v. State, 291 So.2d 226, 228 (Fla. 1st DCA 1974) ("Unquestionably the failure of appellant to keep a proper lookout and his running through the stop sign was negligence, but we are of the view that such did not constitute that high degree of negligence required for a conviction of manslaughter").
On our own motion we have considered the applicability of section 924.34, Florida Statutes (1991), to the present case. This section provides that when an appellate court determines that the evidence does not prove the offense for which the defendant was convicted but does establish guilt of a lesser statutory degree of the offense or a lesser offense necessarily included in the offense charged, the court "shall reverse the judgment and direct the trial court to enter judgment for the lesser degree of the offense or for the lesser included offense." Our review of the record in the present case indicates sufficient evidence to support a conviction for two counts of vehicular homicide. The supreme court recently held, however, in Gould v. State, 577 So.2d 1302 (Fla. 1991), and Taylor v. State, 608 So.2d 804 (Fla. 1992), that the statute only applies to category one lesser included offenses. Both cases rejected the argument that the section also includes category two lesser included offenses. See also Coley v. State, 616 So.2d 1017 (Fla. 3d DCA 1993); N.C. v. State, 581 So.2d 647 (Fla. 4th DCA 1991). The supreme court in Taylor explained the distinction between category-one necessarily lesser included offenses and category-two permissive lesser included offenses as follows:
[W]hen the commission of one offense always results in the commission of another, the latter offense is a category-one necessarily lesser included offense. If the lesser offense has at least one statutory element not contained in the greater, it cannot be a category-one necessarily lesser included offense. However, such a lesser offense may be a category-two permissive lesser included offense if its elements are alleged in the accusatory pleading and proven at the trial.
608 So.2d at 805. Clearly vehicular homicide has a statutory element, operation of a motor vehicle, that is not contained in the manslaughter statute. Because the state in the present case charged culpable negligence manslaughter by operation of the motor vehicle, vehicular homicide is, in this case, a permissive lesser included offense under Taylor. The approved Schedule of Lesser Included Offenses does not list any category one lesser offense for manslaughter by culpable negligence. Fla.Std. Jury Instr. (Crim.) 3/89, p. 287. Accordingly, we REVERSE appellant's judgment and sentence and REMAND with directions to the trial court to discharge appellant.
SMITH, J., concurs.
WEBSTER, J., concurs with opinion.
WEBSTER, Judge, concurring.
I am unable to discern any distinction of significance between the operative facts of this case and those of White Construction Co. v. Dupont, 455 So.2d 1026 (Fla. 1984). It is true that Dupont was not a criminal manslaughter case  it addressed the sufficiency of the evidence to make out a prima facie case for punitive damages in a civil negligence action. However, Dupont reaffirmed that the test to be applied to determine the sufficiency of the evidence to support a demand for punitive damages is the same as that to be applied to determine the sufficiency of the evidence to support a conviction for manslaughter.
I find myself in agreement with Justice Ehrlich's dissent in Dupont:
As to the question of the sufficiency of the evidence to go to the jury on the *539 issue of punitive damages, I quite agree with the Court's approval and reaffirmation of the language set forth in Carraway v. Revell, 116 So.2d 16 (Fla. 1959), but it is my opinion that the evidence was clearly sufficient to support an award of punitive damages... . Suffice it to say that backing a large 80,000 pound loader, twenty-two feet in height, at top speed with no brakes in an area where people are working, as in the instant case, easily meets the Carraway test of the character of negligence which will sustain an award of punitive damages. It ought to be the policy of this state that knowingly driving a motor vehicle at top speed with no brakes in an area where people are present is just as likely to cause injury and damages as the operation of a motor vehicle by an intoxicated driver.
455 So.2d at 1032. However, because Dupont has been neither overruled nor receded from; and because, on facts substantively indistinguishable from those of this case, applying the same test of legal sufficiency which must be applied to this case, the court found the evidence to be legally insufficient; I am constrained to concur.
NOTES
[1] Expert Parrish based his calculations on the inaccurate premise that the victim reacted to the green light in half a second despite Burke's testimony that the victim had been looking over to the left and did not react to the green light for about 10 to 20 seconds. Burke's testimony is supported by Kane's testimony that the light was green for about 10 seconds before the collision occurred. Parrish also based his calculation on the victim going 14 m.p.h. despite testimony that the victim was going much slower.
[2] The expert posited that the delay would have been two-tenths of a second.