673 So.2d 550 (1996)
Dale Ray WERHAN, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 95-1826.
District Court of Appeal of Florida, First District.
May 20, 1996.
F.T. Ratchford, Jr., of Merritt and Ratchford, Pensacola, for Appellant.
Robert A. Butterworth, Attorney General; Jean-Jacques A. Darius, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Dale Ray Werhan, Jr. appeals judgment and sentence for manslaughter by culpable negligence and vehicular homicide. On appeal, Mr. Werhan argues that the evidence presented at trial was insufficient to support a conviction for either of those offenses and that the trial court erred in denying his motion for judgment of acquittal. We affirm the conviction and sentence for manslaughter by culpable negligence but vacate the conviction of vehicular homicide, the lesser of the two offenses. We also sua sponte reverse Mr. Werhan's conviction for DUI as a lesser *551 included offense of DUI causing property damage.
At approximately 2:00 a.m. on September 2, 1994, Mr. Alfieri Aicardi was driving a tractor trailer eastbound along Interstate 10 near the Florida-Alabama state line. Just past exit 1, Mr. Aicardi came upon a pickup truck, the driver of which was Mr. Werhan, completely stopped in the right-hand traffic lane of the interstate. Several feet of the width of Mr. Werhan's pickup were sitting in the twelve-foot traffic lane. The pickup had no lights on and the road was completely dark. Mr. Aicardi attempted to swerve out of the way but he had not seen the pickup in time to successfully maneuver his tractor trailer around it. The tractor trailer hit the rear driver's side portion of the pickup, started to fish-tail, flipped over onto its side and crashed cab first into the south side guardrail. Mr. Aicardi was ejected through the front windshield and was dead before passing motorists were able to reach him.
On October 17, 1994, Mr. Werhan was served with an arrest warrant and on November 4, at arraignment, Mr. Werhan was charged, by information, with DUI manslaughter, manslaughter, vehicular homicide, and DUI causing property damage. On March 15, 1995, an amended information was filed, adding the charge of attempting to leave the scene of an accident involving a death.
On March 29-31, 1995, a jury trial was held. Witnesses who were listening to CB radio on the night of the incident testified that over a period of ten to fifteen minutes they heard fifteen to twenty reports of a pickup truck on the eastbound side of I-10 around exit one stopped in the right-hand lane with no lights. Witnesses who were at the scene testified that they thought Mr. Werhan was under the influence of alcohol. Florida Highway Patrol Trooper Raymond Thall testified that he was dispatched to the scene shortly after the accident occurred and that he believed Mr. Werhan to be under the influence of alcohol. Trooper Thall observed that Mr. Werhan's breath smelled of alcohol, his eyes were bloodshot, his speech was slurred and he had a "laid back and nonchalant, groggy-acting" attitude. At Trooper Thall's request, an emergency medical technician who was dispatched to the scene, drew blood from Mr. Werhan at 3:25 a.m. When later tested with a gas chromatograph, the blood sample contained an ethyl alcohol level of .12 percent.
Florida Highway Patrol Traffic Homicide Investigator Marque Hendrix testified that his investigation revealed that "the extreme left rear corner of Werhan's vehicle was at least five feet into that [twelve-foot] traffic lane when it got struck." Expert witness James Anderson's reconstruction of the accident placed the pickup about in the center of the twelve-foot traffic lane; "with the left rear corner approximately seven to eight feet from the right-hand edge of the road." Defense counsel moved for a judgment of acquittal at the close of the state's case which the trial court denied.
Mr. Werhan testified on his own behalf that on September 1, 1994, at approximately 6:30 p.m., he met some friends at Sidelines, a sports bar on Pensacola beach. He ate and drank two beers at the bar. Around 8:30 p.m. he left the bar, purchased three beers at a gas station and began to drive to Gulf Shores, AL. Mr. Werhan drank one beer on his way to Gulf Shores. Upon arriving in Gulf Shores he stopped at the FloraBama lounge for approximately an hour, had two beers, and left around 10:30 p.m. After leaving the lounge, Mr. Werhan drank the second of the three beers he had purchased at the gas station in Pensacola while driving to Nolan's, a restaurant/nightclub in Gulf Shores. Mr. Werhan consumed three beers at Nolan's and left for home around 12:45-12:50 a.m.
Mr. Werhan further testified that he drank the last beer he had in his truck (his tenth for the evening by Mr. Werhan's own count) as he turned onto Interstate 10 off of Highway 59. "[M]y throat was still kind of dry and I just wanted something wet in my mouth, that's all." Mr. Werhan was proceeding along I-10 when he realized he had missed his exit. Instead of simply proceeding to the next exit and turning around he "press[ed] [his] brakes as rapidly as [he] could." Even though he was already past *552 the exit ramp, his thought was he would stop and back up. Then the truck stalled. Mr. Werhan did not immediately coast into the emergency lane and attempt to restart the engine out of the way of traffic. Rather, he continued to coast slower and slower in the roadway, hoping to successfully "pop the clutch" and didn't attempt to pull off of the roadway until he was going so slow that the pickup did not even have enough momentum to gradually coast into the eight-foot emergency lane.
Mr. Werhan realized he was in a dangerous position: "I knew I was in the road and it was a possibility of me getting hit." He did not get out and attempt to push his pickup truck into the emergency lane because he thought he might have "got hit trying that." Nevertheless, when he couldn't get the pickup to start he "turned everything off." "I turned the radio off, I turned the lights off, I turned everything off I could think of thinking maybe there was an electrical problem and maybe it drained my battery orI didn't know what to think, I just couldn't get it cranked." Mr. Werhan then sat there, on a dark highway, with his lights off trying to restart his vehicle. The dangerous situation he had created should have become even more apparent when ten to fifteen vehicles that were forced to change lanes passed him, some sounding their horns. Mr. Werhan's thoughts, however, were not on doing what he could to mitigate that dangerous situation he had caused. Rather, he couldn't understand why any of these people whose lives he had just endangered didn't stop to help him. "Some of them would beep their horns at me and they'd (indicating) when they went by. I mean, nobody stopped or anything, they just all zipped right by me." Mr. Werhan couldn't recall if he ever even put on his emergency flashers.
Mr. Werhan saw Mr. Aicardi's truck in his rearview mirror and he saw that Mr. Aicardi "was past that exit point and he wasn't turning like the other vehicles. He was still coming. Just kept on coming." Instead of pulling his lights back on to give Mr. Aicardi some forewarning of the danger that lay right in front of him, Mr. Werhan waited until right before impact and then laid down across the pickup's bench seat. At the close of its case, defense counsel renewed its motion for judgment of acquittal which the trial court denied. The jury found Mr. Werhan guilty of DUI, manslaughter, vehicular homicide and DUI causing property damage.
For purposes of a judgment of acquittal, we must view the evidence and all reasonable inferences in the light most favorable to the state, the non-moving party. Behn v. State, 621 So.2d 534, 535 (Fla. 1st DCA 1993). Section 782.07, Florida Statutes provides:
Manslaughter.The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter, shall be deemed manslaughter and shall constitute a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
Culpable negligence is:
consciously follow[ing] a course of conduct showing a reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or such an entire want of care as to raise a presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or such an indifference to the rights of others as is equivalent to an intentional violation of such rights.
Ellison v. State, 547 So.2d 1003, 1006 (Fla. 1st DCA 1989), quashed in part on other grounds, 561 So.2d 576 (Fla.1990).
In the present case, Mr. Werhan consciously made several decisions throughout the course of the evening, the cumulative effect of which warranted the jury's finding of manslaughter by culpable negligence. Mr. Werhan chose to drink at least ten beers over the course of an evening, three, according to his own admission, while he was driving in his pickup truck. A blood sample, taken from Mr. Werhan approximately an hour and fifteen minutes after the accident, revealed a blood-alcohol level in excess of the *553 legal limit. See § 316.193, Fla.Stat. (1993). The jury was free to conclude that Mr. Werhan's alcohol consumption impaired his judgment and was the catalyst for the subsequent ill-advised decisions that he made.
Although Mr. Werhan's parked vehicle was the means by which Mr. Aicardi was killed, this case is different than a traffic accident resulting in a death that warrants a conviction for vehicular homicide. Mr. Werhan drank to the point that he was legally under the influence of alcoholic beverages, did not coast his vehicle off of the highway until it was too late to do so, did not even attempt to push the pickup out of the highway, turned all the lights off while on a dark highway, disregarded the warnings of ten to fifteen vehicles that had to swerve past him, some sounding their horns, and did not in any way attempt to warn Mr. Aicardi. These actions demonstrate a reckless disregard of the safety of persons exposed to their dangerous effects, and a grossly careless disregard of the safety and welfare of the public, such as to warrant a conviction for manslaughter. The conviction and sentence for manslaughter by culpable negligence are affirmed.
The trial court should have vacated the jury verdicts on the lesser included offenses of vehicular homicide and DUI. The judgment form incorrectly adjudicates Mr. Werhan guilty of two counts of manslaughter and two counts of DUI causing property damage (with a sentence imposed for only one count of each). "[O]nly one homicide conviction and sentence may be imposed for a single death." Houser v. State, 474 So.2d 1193, 1196 (Fla.1985); see also Reedy v. State, 527 So.2d 962 (Fla. 5th DCA 1988), Hoag v. State, 511 So.2d 401 (Fla. 5th DCA), review denied, 518 So.2d 1278 (Fla.1987). The error is not rendered harmless simply because no sentence was imposed for the lesser included offenses and the lesser included offenses were not scored on the guidelines scoresheet. See Satterfield v. State, 553 So.2d 793, 794-95 (Fla. 1st DCA 1989) (rejecting the state's harmless error argument and holding that "on retrial if found guilty by a jury of both counts the defendant should not be convicted or sentenced for both DUI manslaughter and the necessarily lesser included offense of DUI.") (emphasis added). Additionally, "traffic offenses such as driving under the influence ... are `continuing offenses' permitting a single conviction per episode." Michie v. State, 632 So.2d 1106, 1108 (Fla. 2d DCA 1994). The convictions for vehicular homicide and DUI, the lesser included offenses of manslaughter and DUI causing property damage, are vacated.
Accordingly, the judgment and sentence are affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
WOLF and MICKLE, JJ., concur.
BENTON, J., concurs in part and dissents in part with opinion.
BENTON, Judge, concurring in part and dissenting in part.
When the engine stalled, Mr. Werhan failed to maneuver his pick-up truck completely off the roadway. Instead of simply coasting onto the paved shoulder, he tried using the truck's momentum to restart the engine. That failing, he turned off the lights to conserve electricity, as part of another effort to restart the engine. The drivers of ten or more vehicles avoided hitting the unlighted pick-up, but Mr. Aicardi was not so fortunate. That he was not wearing a seat belt is immaterial to appellant's criminal responsibility for his death. Union v. State, 642 So.2d 91 (Fla. 1st DCA 1994).
On account of the death, the jury found appellant guilty of two different crimes: manslaughter, a felony of the second degree, and vehicular homicide, a felony of the third degree. Both convictions cannot stand. State v. Cooper, 634 So.2d 1074 (Fla.1994); State v. Chapman, 625 So.2d 838 (Fla.1993); Houser v. State, 474 So.2d 1193 (Fla.1985). The court reverses the conviction for vehicular homicide and affirms the conviction for manslaughter. Although I otherwise concur in the judgment of the court, I would reverse the manslaughter conviction and affirm the vehicular homicide conviction.

*554 Evidence Sufficient To Prove Vehicular Homicide

Simple negligence cannot by itself give rise to criminal liability. "[O]n several occasions this Court has found statutes criminalizing simple negligence to be unconstitutional. See, e.g., State v. Hamilton, 388 So.2d 561 (Fla.1980); State v. Winters, 346 So.2d 991 (Fla.1977)." State v. Smith, 638 So.2d 509, 510 (Fla.), cert. denied, ___ U.S. ___, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994). Something more is required. The jury determined that appellant was guilty of more than simple negligence here. In this regard, the evidence was undoubtedly sufficient. But a person may be criminally responsible for another's death, if the death is caused by operation of a motor vehicle, without being guilty of manslaughter. McCreary v. State, 371 So.2d 1024 (Fla.1979).
Inasmuch as the Werhan vehicle was stationary at the time of the accident, the question arises whether appellant was then involved in "operation of a motor vehicle." Discussing a statute proscribing manslaughter "`by operation of a motor vehicle by any person while intoxicated.' Comp.Gen.Laws 1927, § 7749," Barrington v. State, 145 Fla. 61, 199 So. 320, 322 (1940), our supreme court has said:
"The word `operated' is not, as the defendant contends, limited to a state of motion produced by the mechanism of the car, but includes at least ordinary stops upon the highway, and such stops are to be regarded as fairly incidental to its operation * * *."
"The statute must be read with reference to its manifest intent and spirit and cannot be limited to the literal meaning of a single word. It must be construed as a whole and interpreted according to the sense in which the words are employed, regard being had to the plain intention of the Legislature. So considered, we cannot doubt that the statute is broad enough to include automobiles at rest, as well as in motion, upon the highways."
Id. 199 So. at 323 (quoting Commonwealth v. Henry, 229 Mass. 19, 118 N.E. 224 (1918)). Similarly "operation of a motor vehicle" within the meaning of the vehicular homicide statute must include placing "automobiles at rest, as well as in motion, upon the highways," id., at least in the manner appellant did so here.
The series of misjudgments that led to Mr. Aicardi's death may have been in part the product of the alcohol appellant consumed, even though the jury acquitted him of DUI manslaughter. See generally Magaw v. State, 537 So.2d 564 (Fla.1989). The jury had the "right to consider, along with the other evidence, that defendant prior to the accident had partaken of alcoholic beverages, despite the fact that he was acquitted [of]... manslaughter while intoxicated." Hamilton v. State, 152 So.2d 793, 797 (Fla. 2d DCA), cert. denied, 156 So.2d 388 (Fla.1963). But "that defendant `had been drinking' or was to some degree under the influence is not proof of culpable negligence." Jackson v. State, 100 So.2d 839, 842 (Fla. 1st DCA 1958).
Such evidence is admissible only upon the theory that persons under the influence of alcohol to any considerable degree, though not actually intoxicated, are more apt to be heedless, reckless and daring than when free from such influence; and, standing alone, cannot make an act wanton and reckless that would not otherwise be so.
Id. Here appellant's behavior was less daring than dimwitted. As misguided as his efforts were, there is no evidence he intended anyone harm. For all his mistakes, he did not show himself utterly "heedless" of others' welfare. Appellant did not abandon his pickup truck and flee to safety. He tried to restart the engine, which would have ameliorated the danger for all. Even so it is necessary to reject appellant's contention that, on the evidence the jury heard, it erred in finding him guilty of gross negligence, "that kind or degree of negligence which lies in the area between ordinary negligence and wilful and wanton misconduct." Carraway v. Revell, 116 So.2d 16, 22 (Fla.1959).

A Difference Of Degree
"[I]n a prosecution for homicide arising out of the negligent operation of a motor vehicle, the State may elect to charge the defendant under the manslaughter statute," State v. Young, 371 So.2d 1029, 1030 (Fla.1979), or the vehicular homicide statute. See State v. *555 Lewek, 656 So.2d 268 (Fla. 4th DCA 1995) (defendant may be charged with, but not convicted of, both vehicular homicide and manslaughter). "[T]he legislature created the offense of vehicular homicide `to cover the hiatus between [ ...] manslaughter and the traffic offense of reckless driving....' Id. at 1027." W.E.B. v. State, 553 So.2d 323, 324 (Fla. 1st DCA 1989) (citing McCreary v. State, 371 So.2d 1024 (Fla.1979)). "The degree of culpability required for a vehicular homicide is less than that needed for manslaughter, but more than a mere failure to use ordinary care. See McCreary...." State v. Esposito, 642 So.2d 25, 26 (Fla. 4th DCA 1994).
Read without the gloss of McCreary, section 782.071(1), Florida Statutes (1993), seems to define a kind of negligence not readily distinguishable from culpable negligence proscribed by the manslaughter statute. Section 782.071(1), Florida Statutes (1993), provides:
"Vehicular homicide" is the killing of a human being by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another.
The McCreary majority rejected the three dissenters' view that the purpose of section 782.071(1), Florida Statutes (1993), "was to decrease the possible penalty for manslaughter caused by the operation of a motor vehicle." 371 So.2d at 1028. Vehicular homicide is a distinct offense.
In traffic death cases, the boundary that separates gross negligence from wanton and wilful misconduct is the line of demarcation between vehicular homicide and manslaughter. In construing the vehicular homicide statute, the McCreary court held that the Legislature could
make punishable as a third-degree felony reckless driving which results in the killing of a human being where the degree of negligence falls short of culpable negligence but where the degree of negligence is more than a mere failure to use ordinary care.1
1Reckless driving is defined in section 316.029, Florida Statutes (1975), as follows:
(1) Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving.
371 So.2d at 1025-26. Negligence that "falls short of culpable negligence but ... is more than a mere failure to use ordinary care," Id. at 1026, is gross negligence as defined in Carraway. With the McCreary gloss, the vehicular homicide statute criminalizes gross negligence in the operation of a motor vehicle.

Evidence Insufficient To Prove Manslaughter
The defendant in McCreary, who like appellant had been drinking alcoholic beverages, disregarded a stop sign that was visible for four hundred feet, drove into a heavily travelled intersection without reducing speed, and struck "the victim's vehicle with sufficient force to knock it across three lanes of traffic and cause it to completely flip over," Id. at 1026-27, killing the victim. This was held "not sufficient to establish that the defendant's conduct was of such a gross and flagrant character as to support a finding of culpability sufficient to sustain a conviction for manslaughter." Id. at 1026.
Convicted of manslaughter by culpable negligence, the defendant in Behn v. State, 621 So.2d 534 (Fla. 1st DCA 1993) had driven an eighteen-wheel tractor trailer, with brakes he knew to be out of adjustment, through a red light, striking a car entering the intersection on a green light, and killing the occupants. We held that "the conduct complained of did not meet the standard required under the manslaughter statute for culpable negligence," id. at 536, saying, "The state failed to prove a course of conduct showing reckless disregard of human life or a conscious indifference to the consequences." Id. at 537.
The defendant was "all but drunk" in Brown v. State, 511 So.2d 1116, 1117 n. 1 (Fla. 2d DCA 1987) when he drove his speeding car into a palm tree, killing his wife. The Second District reversed his manslaughter conviction, holding "the evidence ... insufficient as a matter of law to constitute manslaughter *556 by culpable negligence." Id. at 1117. See the cases collected in State v. Patel, 453 So.2d 218, 219 n. 2 (Fla. 5th DCA 1984) (separate opinion of Sharp, J.). See also White Constr. Co. Inc. v. Dupont, 455 So.2d 1026, 1028 (Fla.1984) (that a forty-ton loader with brakes known to be defective proceeded at top speed toward the victim's truck with predictable results did not establish culpability of the kind that would support a manslaughter conviction).
Appellant brings to our attention cases in which courts have reversed vehicular homicide convictions. Even if the result in some of these cases may be attributed to a discredited reading of the vehicular homicide statute (the reading the McCreary dissent advocated), they support appellant's contention that his manslaughter conviction should be reversed because he was not guilty of "culpable negligence." One such case was Esposito:
While operating a Century Village "trolley" bus, Esposito struck and killed an elderly woman crossing in a pedestrian walkway. The victim, walking slowly with a four pronged cane, had stepped off the median and was struck by the center of the bus at about the halfway point in the crosswalk. There is evidence that Esposito had an unobstructed view with no distracting conditions.... Witnesses ... stated that the driver should have seen her crossing and had ample opportunity to stop.
... The crosswalk was ... heavily traveled. There is a pedestrian warning sign posted and pedestrians in the crosswalk have the right of way. The bus was in good working order.
642 So.2d at 26. Esposito's conviction for vehicular homicide was reversed. See W.E.B. (holding that speeding defendant who, after drinking beer, drove onto shoulder, overcorrected, and caused fatal collision in oncoming driver's lane, was not guilty of vehicular homicide). But see Hamilton v. State, 439 So.2d 238 (Fla. 2d DCA 1983).
Because appellant was proven guilty of gross negligence, the conviction for vehicular homicide must stand. But appellant is guilty of nothing like the deliberate endangerment that occurred in Ellison v. State, 547 So.2d 1003 (Fla. 1st DCA 1989), quashed in part on other grounds, 561 So.2d 576 (Fla.1990). He is no more culpable than other defendants whose manslaughter convictions for traffic deaths have been overturned. His manslaughter conviction ought to be reversed, as well. While he created an unacceptable risk in turning the truck lights off, uncontroverted evidence showed that he did it as part of an attempthowever ill conceivedto remove the hazard his truck's being stopped in the roadway created. His ineptitude, while disastrous, did not evince wantonness, a "reckless indifference to the rights of others which is equivalent to an intentional violation of them," or "an entire want of care."