977 So.2d 608 (2007)
TIGER POINT GOLF AND COUNTRY CLUB, Fairways Group, LP aka Fairways Golf Corporation dba Tiger Point Golf and Country Club, and Meadowbrook Golf Group, Inc. Corporation, Appellants,
v.
William J. HIPPLE, Appellee.
No. 1D07-0657.
District Court of Appeal of Florida, First District.
December 20, 2007.
*609 Peter S. Roumbos of Young, Bill, Fugett & Roumbos, P.A., Pensacola, for Appellants.
John C. Barrett, Gulf Breeze, for Appellee.

CORRECTED OPINION
BENTON, J.
Appellants (Tiger Point) seek to overturn the judgment entered against them in favor of William J. Hippie for injuries Mr. Hippie sustained when he and two others forcibly removed a handrail on Tiger Point's premises and dropped it on Mr. Hippie's foot, breaking a bone in his toe. We do not disturb the award of compensatory damages. But we agree with Tiger Point that the trial court erred in denying its motion for summary judgment as to punitive damages, and reverse the award of punitive damages.
Mr. Hippie sued on the theory that Tiger Point breached its duty as a landowner by failing to maintain a handrail in safe condition. See generally Owens v. Publix Supermarkets, Inc., 802 So.2d 315 (Fla. 2001) (superseded in part by Fla. Stat. § 768.0710 (2002)); Brooks v. Phillip Watts Enters., 560 So.2d 339, 341 (Fla. 1st DCA 1990). See also Restatement (Second) of Torts § 343 (1965).[1] The jury found Mr. Hippie and each of the other two men 25 per cent at fault, and also found Tiger Point 25 per cent at fault, putting compensatory damages at $6,467.75 (subject to a 75 per cent reduction) and punitive damages at $85,000 (never reduced).
Before the case went to the jury, Tiger Point moved for summary judgment exonerating it from punitive damages. The trial court denied the motion. Now *610 that appeal has been taken from the amended final judgment, the antecedent denial of summary judgment is reviewable.. The standard of review for orders denying summary judgment is de novo. See The Florida Bar v. Rapoport, 845 So.2d 874, 877 (Fla.2003). We conclude that, when the motion for summary judgment was decided, the record entitled Tiger Point to judgment in its favor on the claim for punitive damages.[2]
At that point, the record contained statements from five individuals that supported appellee's contention that the handrail had been in disrepair for some time. Todd Rice's affidavit reports that "several days or weeks before" the injury, he noticed the handrail "was very badly rusted and in terrible shape," and that he discussed the handrail's condition with employees of Tiger Point Golf Club and the Members Grill. Ann Rhodes testified on deposition that she informed the manager of the club ten to twelve days before Hippie was injured that the handrail was in "very, very bad condition" and that it needed to be repaired "immediately." Verne Rhodes stated in his deposition that the handrail "had corroded almost entirely in two before breaking" and that it was "just being held by a thread." William Ballou testified that the handrail had deteriorated "[o]ver a period of time." Finally, Margaret Hippie testified on deposition that the rail had been "beat up and rusted and horrible" "for a long time."
Viewing the record in the light most favorable to the non-movant, Tiger Point had notice of the badly deteriorated condition of the handrail several weeks prior to the injury. While such knowledge and inaction constituted a breach of Tiger Point's duty to invitees who might have used the railing for support,[3] this breach was insufficient to sustain Mr. Hippie's claim for punitive damages. The conduct punitive damages properly condemns and hopefully deters is willful and wanton misconduct of a character no less culpable than what is necessary to convict of criminal manslaughter. See White Constr. Co. v. Dupont, 455 So.2d 1026, 1028 (Fla.1984). See also Restatement (Second) of Torts § 908 (1979).[4] In Dupont, the court held *611 that operating a forty-ton CAT 988 "loader" with knowledge that its brakes had not been working for some time was not enough to support a punitive damages claim. Dupont, 455 So.2d at 1028-29. Similarly, in Behn v. State, 621 So.2d 534 (Fla. 1st DCA 1993), we held that knowingly operating a truck with bad brakes was not culpable negligence of the kind required for a manslaughter conviction. Behn is pertinent because, as held in Dupont and reiterated in Behn, the standard for punitive damages is equivalent to that for manslaughter. See also Clooney v. Geeting, 352 So.2d 1216 (Fla. 2d DCA 1977) (allowing an employee to drive a company truck, while knowing that he was not physically or mentally capable of driving the truck properly, was insufficient to support a claim for punitive damages arising out of a resulting accident).
Tiger Point's conduct did not involve an "element of outrage similar to that usually found in crime." See Restatement (Second) of Torts § 908 cmt. b (1979). If, as the court concluded in Dupont and Behn, causing permanent injuries or fatalities by knowingly operating trucks with defective brakes does not merit punitive damages, then merely neglecting (albeit for several weeks) to repair an obviously defective handrail, which ultimately results in injury to a volunteer trying to repair or remove it, does not evince the culpability required for punitive damages. The trial court erred, therefore, by failing to grant Tiger Point's motion for summary judgment on the issue of punitive damages, and we reverse' the award of punitive damages accordingly.
Insofar as it awards punitive damages, the judgment is reversed, but the judgment is affirmed otherwise.
BARFIELD and THOMAS, JJ., Concur.
NOTES
[1] "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts § 343 (1965).
[2] We thus pretermit any decision on Tiger Point's alternative argument that the trial court erred initially in allowing Mr. Hippie to amend his complaint to state a claim for punitive damages. Before a plaintiff can assert a claim for punitive damages, he must make a "reasonable showing by evidence in the record or proffered by [him] which would provide a reasonable basis for recovery of such damages." § 768.72(1), Fla. Stat. (2006). This provision has been Interpreted to "create a substantive legal right not to be subject to a punitive damages claim and ensuing financial worth discovery until the trial court makes a determination that there is a reasonable evidentiary basis for recovery of punitive damages." Globe Newspaper Co. v. King, 658 So.2d 518, 519 (Fla. 1995). On appeal, the standard of review is de novo. See Holmes v. Bridgestone/Firestone, Inc., 891 So.2d 1188, 1191 (Fla. 4th DCA 2005) ("When a trial court is determining if a plaintiff has made a `reasonable showing' under section 768.72 for a recovery of punitive damages, it is similar to determining whether a complaint states a cause of action, or the record supports a summary judgment, both of which are reviewed de novo."). The record was virtually identical when the amendment was allowed and when the motion for summary judgment was decided.
[3] Tiger Point does not argue on appeal that it owed Mr. Hippie no duty because his efforts to repair or remove the railing could not have been foreseen.
[4] "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Restatement (Second) of Torts § 908(2) (1979) (emphasis added). The comment explains further the type of conduct that warrants an award of punitive damages:

Since the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, these damages can be awarded only for conduct for which this remedy is appropriate-which is to say, conduct involving some element of outrage similar to that usually found in crime.
Restatement (Second) of Torts § 908 cmt. b (1979) (emphasis added).